## CENTRAL RAILROAD vs. BRINSON, by next friend.

[Two justices presiding. Argued at the last term, and decision reserved. The head-notes below report the views of Justice Hall and Chief Justice Jackson, respectively.]

HALL, J.

1. Railroads, for the benefits and privileges conferred upon them, owe important duties to the public, which they are strictly enjoined to perform; and to enable them to perform such duties, they are entitled to the unobstructed use of all the means which the law places at their disposal for that purpose.

2. While a railroad company has the right to the exclusive use of its tracks, cuts and embankments, except at crossings, nevertheless, where a mere wanton or malicious act of an employé, acting in the

70 207
93 393

70 207
105 102

70 207
e112 183

70 207
117 465

70 207
120 912

70 207
f127 567

scope of his duty, or such gross negligence as is tantamount to wilfulness, causes an injury to a trespasser upon the track, cuts or embankments of the road, it will be held responsible.

3. If a plaintiff, by ordinary care, could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover; but in other cases, the defendant is not released, although the plaintiff may, in some way, have contributed to the injury sustained. No person shall recover from a railroad company for an injury to himself or his property, where the same is done by his consent, or is caused by his own negligence. If the plaintiff and the agents of the company are both at fault, the former may recover, but the damages shall be diminished by the jury in proportion to the amount of default attributable to him.

(*a.*) The presumption (except in case of suits brought by employés, Code, §3036) is against the company; and this rule is also taken from the common law.

4. The plaintiff, a boy over fifteen years of age, with others, had been in the habit of walking along the railroad track in going to and from school, it being a better walk than the dirt road near by. He had been accustomed to remain on the track until the cars came near to him, and a short time before the accident, had twice received the complaints of one of the employés of the road, for waiting too long in getting from the track. He knew about what time the train might be expected. On the day of the accident, he and a girl, smaller than himself, were walking on the track; the approaching train could be seen more than a quarter of a mile distant; he remained on the track until it came very near him; he then stepped off on one side upon a pathway running beside the track; his distance from the track was estimated differently, but was small; he could have gone further, the bank being sloping and not high; he stood till a large part of the train had gone by, and was looking at the wheels, when he was struck (as he claimed) by a piece of plank projecting from a flat car, was knocked down and run over:

*Held,* that he was bound to be watchful and careful, and the absence thereof makes him chargeable with negligence, which will prevent a recovery. His conduct in this case would, perhaps, not have been short of culpable negligence even in one who was rightfully on the track; and it might and could have been easily avoided.

(*a.*) Slight circumstances may overbalance the presumption of freedom from negligence which is supposed to exist in favor of the plaintiff, such as his being found in a position of danger unexplained, the free use of intoxicating liquors, careless habits, etc.

(*b.*) The rule of diligence will vary with the facts of each case, and reasonable diligence is to be determined from the facts and surrounding circumstances.

(*c.*) The company's servants may ordinarily presume that a person

of full age and capacity, who is walking on the track at some distance before the engine, will leave it in time to save himself from harm; or, if approaching the track, that he will stop, if it becomes dangerous for him to cross it. This presumption may not be justified under some circumstances, as in case of a person intoxicated, asleep, or otherwise off his guard.

(*d.*) A failure to give precautionary signals, when in no manner causing or contributing to the injury, does not impose a liability upon the company. If the traveler knew by other means of the coming train, the omitted warnings cannot be the cause of the collision.

5. One who walks upon the track of a railroad, not at a road crossing, is a trespasser thereon, and while the road would be liable for a wanton or wilful wrong of its agents, acting within the scope of their duty; or for gross negligence or carelessness, evincing reckless disregard of the safety of others; or where they perceive the danger of a party in time, and make no effort to avoid it,—still, the company is under no such obligation to a trespasser as to those who are properly and lawfully upon its premises, either for the purpose of transacting legitimate business with it, or in furtherance of rights reserved to them by law.

(*a.*) It is the duty of every man to conduct himself and to manage his property with ordinary care and diligence, and with no more than that, unless he has increased or diminished his responsibility by assuming some special relation with the person who seeks to enforce it. But if one does a gratuitous act for another with the assent of the latter, his responsibility is reduced to the duty of merely slight care and diligence, and to that extent he is bound; and on the other hand, the party receiving the favor is bound to exercise great care and diligence therein for the benefit of the party conferring it.

(*b.*) The common law has a peculiar regard for human life, and for this reason, exacts a greater degree of care when life is at peril than in relation to any matter of mere property. It requires from all persons, including those who render gratuitous services, at least ordinary care for the safety of life.

(*c.*) There is a difference as to the degree of care to be observed by the company's servants to one who avails himself of a gratuitous privilege, and a wrong-doer.

(*d.*) A person who is neither a lunatic, idiot nor insane, and who has arrived at fourteen years of age, or before that age, if such person knows the distinction between good and evil, is held responsible for crime; under ten years of age, he is not responsible; and he is equally responsible in cases of tort, provided he has reached those years of discretion and accountability prescribed by the Code for criminal offences.

(*e.*) This case differs from 64 *Ga.*, 306, and 60 *Ga.*, 339.

6. The mere fact that people have frequently trespassed upon a railroad track, and that the company may not have resorted to any means to stop the same, will not imply consent to such use of the track; nor will it create any right in the public by such user.

(*a.*) When a railroad, by authority of law, goes into possession of land for the objects of its creation, is not that an appropriation to specified uses? and can it divert this use to purposes wholly inconsistent with those which it is authorized to pursue, and which may imperil the lives of travelers and freighters on its train, without incurring a forfeiture of its privileges? *Quære.*

(*b.*) A mere naked license or permission to enter or pass over an estate will not create a duty or impose an obligation on the part of the owner to provide against the danger of accidents.

7. The verdict was contrary to law and evidence, and a new trial should have been granted on that ground.

8. In charging on the subject of contributory negligence, it was error in the court to charge as follows: "A railroad company is bound to use ordinary care in the running of its trains, to prevent them from coming in collision with the person of another; and this it is bound to use, even if that other is, on his side, in some degree negligent; therefore, if damage happen to such other person by a collision which the company, by the use of ordinary care, might have prevented, the company must make good the damage." Such a charge left the jury to infer that they were at liberty to find the entire amount of the damage done to the plaintiff, without making any abatement for the negligence chargeable to him.

9. The attention of the general assembly is called to the growing evil of using railroad tracks and embankments as footways, and their interposition to prevent so perilous a practice is invoked.

JACKSON, C. J., concurring:

1. The judgment of reversal is concurred in on the ground of error in charging as to the measure of damages, the expression "must make good the damage" being calculated to mislead the jury and convey the idea that the company must pay full damages, thus withdrawing from the jury the doctrine of contributory negligence as lessening the damages which they might give. ·

2. Where a parcel of youths and children are in the habit of passing to and from school on a path within the right of way of a railroad company, and have been for years in that habit within the limits of a village, in the knowledge of the railroad authorities, they are not trespassers to the extent and in the sense that the railroad company is only liable for gross negligence, if any of them be killed or injured. On the contrary; the company is bound to use all ordinary and reasonable care and diligence to avoid injury to them, and to neglect to use such reasonable and ordinary care and diligence would make the company liable. As to passengers, extraordinary care and diligence is required.

(*a*.) Questions of negligence are for the jury. The quantum of diligence required of the railroad by law being given by the court, it is for the jury to say whether or not the facts proved make that quantum, subject to a review by the court to see if there was sufficient testimony to support the verdict.

(*b*.) If a railroad train swept through a village without ringing its bell or slacking its speed, with a scantling projecting unusually from its car beyond the track, though within its right of way, and thereby a youth was hurt in its rapid transit, the company is liable, unless by the use of ordinary care he could have avoided the consequences to himself of such transit, or the injury was caused by his negligence alone. If both himself and the agents of the company were at fault, but neither the sole cause of the injury, and if he could not by ordinary care have avoided the consequences to himself, then the damages should be proportioned according to the default of each. The jury pass upon the facts, having in view the age of the plaintiff, previous warnings, if any, and all the surrounding circumstances.

3. The main question in this case is ruled in 60 *Ga.*, 339. See also 37 *Ga.*, 593; 60 *Ga.*, 441; Code, §§2061, 2063, 217.

August 27, 1883.

Railroads. Damages. Negligence. Torts. Minors. Infants. Trespassers. Before Judge SNEAD. Burke Superior Court. November Term, 1881.

Jefferson Brinson, a minor, represented by his father and next friend, James Brinson, brought his action for damages against the Central Railroad. His declaration alleged that in February, 1877, the Central Railroad being the lessee of the Augusta and Savannah Railroad, and operating it, had so carelessly and negligently loaded and run its engine and cars in the county of Burke that they ran over and crushed the foot and ankle of plaintiff, causing him to lose the same and otherwise injuring him. Damages were laid at $20,000. Defendant pleaded the general issue.

On the trial, the evidence for the plaintiff showed, in brief, the following facts:

Plaintiff was a boy fifteen years of age, living in the town of Lawtonville, Burke county. He attended school on the opposite side of the town from that where he lived, and about three miles distant from his home. He fre-

quently walked to school, and in doing this he was accus-
tomed to walk along the track of the A. and S. R. R.,
which was leased and operated by the C. R. R.   There
was a dirt road running along the line of defendant's right
of way, but it was not suitable for the use of foot passen-
gers, and in winter was muddy and almost impassable.
Near the school house there was a culvert under the rail-
road, which had become partly stopped up, causing a pool
of water to collect and rendering the road unsuitable for
walking.· It was the common custom of persons passing
through Lawtonville on foot to walk along the railroad
track.   Not far from the school house the railroad was
elevated above the ordinary level of the ground, and ran
along an embankment about six feet in height.   On the
morning of February 7, 1877, plaintiff, in company with a
girl who was attending the same school, was walk-
ing along the track towards the school house.   When
within about two or three hundred yards of his destina-
tion, and mid-way between a switch and the point where
the wagon road crossed the railroad, being about twenty
yards from each, he saw a wood train approaching him.
It was about two or three hundred yards distant.   The
track was straight for about a mile, and there was nothing
to prevent seeing the train.   When the train had arrived
within from twenty-five to forty yards of plaintiff, he
stepped off the track on to the embankment, as did also
his companion.   At this point the embankment was about
four or five feet wide outside of the track.   Plaintiff moved
some three feet from the track to allow the train to pass.
His companion was a little in front of him and slightly
further from the track.   She was also not so tall as he.
The train was composed of four or five box cars and several
open flat cars, the box cars being next to the engine, the
flat cars following, and the conductor's cab being last.
There was nothing to prevent the conductor from seeing the
entire train.   It was running at a very rapid speed; more
rapidly than usual.   The rate was estimated at from

twenty to thirty miles per hour.   The engine and box cars
passed plaintiff without injury to him.   Plaintiff was watch-
ing the passing cars when a flat car near the middle of the
train approached him, and he noticed a piece of plank or
timber projecting from it.   He at once dodged, and en-
deavored to escape the blow which he saw was imminent,
but it was impossible to do so, and the plank struck him on
the head, knocking him down, and his right foot and ankle
were crushed.   The plank which caused the injury was
about nine or ten inches wide, two or two and a half inches
thick, and eighteen or twenty feet long.   It projected six
or eight feet beyond the side of the car.   After striking
plaintiff, it struck the upright iron switch a short distance
beyond him, with such force as to bend it over.   This
switch was situated from four to six feet from the track,
and by the force of the collision between it and the
plank, the latter was knocked from the train and stuck in
the ground.   An indentation was found in the plank,
variously estimated to be from three to six feet from the
end of it.   When the train passed Perkins' junction, about
two and a quarter miles from Lawtonville, before the acci-
dent happened, the plank was seen to be projecting three
to five feet from the car, by two or three witnesses.   One
of the parties who saw it motioned to some one on the
train and hallooed, but nothing was done in regard to it.
No whistle was blown or signal given before the accident
occurred.   Plaintiff could have left the embankment en-
tirely before the train reached him, but moved to a dis-
tance which he considered safe, and where the train, ordi-
narily loaded, would have passed him without injury.   The
wagon road which crossed the railroad was one in common
use, and had a plank crossing over the railroad track kept
in repair by the railroad, but there was no sign-board at
such crossing.   There was a signal post about three hun-
dred yards beyond the point where the accident occurred.
By reason of the injury, plaintiff was confined to his bed
for a number of weeks ; was compelled to have his leg

amputated, suffering great pain from it; his health was impaired, and he was rendered permanently unfit for any active business which would require walking or standing.

The evidence for the defendant was, in brief, as follows:

The train in connection with which the accident occurred was a wood train going from Augusta to a point above Millen for wood. It was composed of three box cars next to the engine, twelve empty flat cars, and the cab. It was not the habit of wood trains to stop at Lawtonville unless there were cars to be left there, which was not the case that morning. It was a dark and foggy morning, and the conductor could not see the piece of timber from the cab, it being ten cars distant from him, and the standards being up in the ends of the flat cars. He kept the usual lookout, and observed the usual precautions. The average speed, according to schedule for that train, was from fifteen to eighteen miles per hour. On account of the darkness of the morning, and foggy state of the weather, the train was running a little slower than usual. There was a light down grade at the point where the accident occurred, extending about three-quarters of a mile. As the train neared the school house, the engineer saw some children on the track, and opened the cylinder cock for the purpose of letting off steam and scaring them off. He also saw the plaintiff and the young lady with whom he was just above the switch on the track. They stepped from the track, the engine passed them, and the engineer knew nothing of the accident until sometime afterwards. When they stepped from the track the girl or young lady was farthest from the train. The plaintiff was very close to the cars, being within a foot or a foot and a half of them. The iron stirrups into which standards are inserted on flat cars, project about five inches from the side of the cars and to or beyond the ends of the cross-ties. Two or three of the persons on the train noticed that plaintiff was very close to the track, and one of them remarked upon it. The conductor saw plaintiff very close to the cars, saw him

fall, did not know the cause of it, but thought that he had been struck by one of the standards. Plaintiff got up almost immediately upon falling, and the conductor did not think that he was injured. The right of way of the railroad is one hundred and fifty feet in width and belongs to the company. The railroad was built before the village of Lawtonville was in existence. Sometimes freight projects beyond the side of the cars, and sometimes wood projects a foot or two. On one occasion a large wheel was carried over this track which projected two or three feet beyond the edges of the car. On two previous occasions, while walking on the track, plaintiff had delayed in getting off until the train was very close to him, so as to cause complaint from the section-master and on one occasion compelling him to slacken the speed of the train. The conductor saw a man motioning to him at Perkins' station, but as the same person had previously spoken to him about obtaining some cars, he thought the sign had reference to that. On a previous trial of this case, plaintiff swore that he was looking to the side of the car passing, and happening to turn his head, saw the piece of timber projecting from the open car.

The jury found for the plaintiff $11,500. Defendant moved for a new trial on the following grounds:

(1.) Because the verdict is contrary to the following charge of the court: "The plaintiff is bound to make out his own entire case by testimony, so far as regards himself and defendant. If he fails to do so in any particular, he cannot recover."

(2.) Because the verdict is contrary to the following charge of the court: "If the railroad company, or its employés, were negligent at the time of this accident, yet if that negligence did not cause or contribute to the injury of this plaintiff, he cannot recover on that ground."

(3.) Because the verdict is contrary to the following charge of the court: "If the engineer failed to blow the whistle or ring the bell, and even thus violate the statute,

yet if Brinson, plaintiff, had all the notice of the approach of the train, by actually seeing it, which he would have had by the whistle or the bell, then he cannot recover on that ground."

(4.) Because the verdict of the jury is contrary to the following charge of the court: "Even though the officers and agents of the railroad company were guilty of negligence on that occasion, yet if Brinson, by the exercise of ordinary care and diligence, could have avoided the consequences to himself of that negligence, he cannot recover."

(5.) Because the verdict is contrary to the following charge of the court: "And where the evidence shows that plaintiff failed to use this care and diligence to avoid the consequences to himself, it is not a case of contributory negligence, but plaintiff cannot recover at all."

(6.) Because the verdict is contrary to the following charge of the court: "A traveller who selects the track of a railroad on which to walk does so at his peril, and is bound to make vigilant use of his senses of sight and hearing to avoid collision, and if he neglects to do so and is injured thereby, he cannot recover, even though the railroad company is chargeable with negligence."

(7.) Because the verdict is contrary to the following charge of the court: "Even though the train was running at a greater speed than was proper, yet if the plaintiff could have avoided the consequences resulting therefrom by the use of ordinary care and diligence on his part, he cannot recover."

(8.) Because the verdict is contrary to the following charge of the court: "It is not the duty of a railroad company under the statutes of this state, to blow the whistle when its trains are passing through an incorporated town."

(9.) Because the verdict is contrary to law, in that it is excessive and not warranted by the law and testimony in this case.

(10.) Because the verdict is contrary to law, evidence and against the weight of the evidence.

(11.) Because the court committed error in giving the following charge to the jury in writing, at the request of plaintiff's counsel, without qualification thereto: " A railroad company is bound to use ordinary care in the running of its trains, to prevent them from coming in collision with the person of another, and this it is bound to use, even if that other is, on his side, in some degree negligent, therefore, if damage happen to such other person by collision, which the company by the use of ordinary care might have prevented, the company must make good the damage."

The motion was overruled, and defendant excepted.

This case has been tried three times. On the first trial, the jury found for the plaintiff $10,000.00. A new trial was granted by the Supreme Court (See 64 *Ga.*, 475). On the second trial, the jury found for the plaintiff $12,500.00, and on the present trial, $11,500.00.

A. R. LAWTON; J J. JONES, for plaintiff in error.

A. M. ROGERS; E. L. BRINSON; GIBSON & BRANDT; L. E. BLECKLEY, for defendant.

HALL, Justice.

What rights and powers have railroad companies over the tracks and road beds upon which their trains are run; and growing out of these rights, what duties do they owe to the public; and especially, what are their obligations to look to the safety and protection of persons using their tracks and the embankments upon which they rest, without their express license, for purposes other than those connected with the business they were created and authorized to transact? These are the questions made by this record, and which both parties have urgently and earnestly invoked us to decide. We have held them over for a considerable

length of time, that we might give them such consideration and investigation as their importance to these corporations and the community at large demands.

1. While it may be impracticable, if not impossible, to lay down any general rule which will cover every conceivable violation of right or breach of duty that may arise from the negligence of each of the contending parties, yet there are certain fundamental principles, as clear as axiomatic truths, that stand in no need of argument or illustration, to secure their recognition or to enforce their application, which directly relate to the issues with which we have now to deal. Among these is the well established rule that such corporations, for the benefits and privileges conferred upon them, owe important duties to the public which they are strictly enjoined to perform, and to enable them to perform such duties, they are entitled to the unobstructed use of all the means which the law places at their disposal for that purpose. In Cauley *vs.* The Pittsburg, Cincinnati & St. Louis Railway Co., 95 Penn. St. R., 398, the supreme court of that state upon these questions thus declares the law : " It was said by Mr. Justice Strong in Philadelphia & Reading R. R. Co. *vs.* Hummell, 8 Wright, 278: 'It is time it should be understood in this state, that the use of a railroad track, cutting or embankment is exclusive of the public everywhere, except where a way crosses it.' The same doctrine has been reiterated again and again in subsequent cases. In Mulherrin *vs.* Delaware, Lackawanna & Western Railroad Co., 31 P. F. Smith, 366, it was said, except at crossings, where the public have a right of way, the man who steps his foot upon a railroad track, does so at his peril. The company has not only a right of way, but it is exclusive at all times and for all purposes"; and Railroad *vs.* Norton, 12 Harris, 465, was cited in support of this rule. Many other cases might be referred to, were it necessary. We live in an age of steam and of rapid development. The world demands quick transportation. Increased speed necessarily involves increased

·danger. Holding, as we do, such corporations to a strict re-·sponsibility for negligence, it is our duty to give them a ·clear track. This rule is not only proper in itself, but is necessary for the preservation of life. Its propriety is ·no longer a subject for discussion."

2. So far as this decision is confined to the right of the railroad company to the exclusive use of its tracks, ·cuts and embankments, and to its liability for a failure or refusal to perform its duties strictly, it meets our approval; but we cannot go to the extent of freeing the company :from all responsibility for any damage that its agents may recklessly or wantonly inflict upon a person trespassing ¯upon its property. The extent to which this rule is im-pliedly laid down here is subject to important modifica-·tions. In Illinois Central Railroad Company *vs.* Godfrey, 71 Ill. R., 500, it is held that " the right of way of a rail-·road company is its exclusive property, upon which no ¯unauthorized person has a right to be, for any purpose, and any person who travels upon the right of way of a rail-road company, for his own convenience, as a footway, and not for any purpose of business connected with the rail-road, is a wrong-doer and a trespasser;" and if he is in-·jured by a passing train, under these circumstances, "the company, can only be held liable for wanton or wilful in-jury, or such gross negligence as evinces wilfulness." Conceding this principle as to the right of the company to the exclusive use of its track, etc., except at crossings, it ·does not follow that, because a person thus wrongfully using this right of way, is a trespasser and a wrong-doer, he thereby becomes " altogether an outlaw," to whom the ·company owes no duty whatever. As the common law, in case of gross negligence or carelessness on the part of those in charge of the train, they are held liable for an in-jury inflicted even upon a trespasser. 6 Am. and Eng. R. R. cases, 1–17, and note to last page, which collects and ·classifies many of the American cases upon this subject, as well as upon the liability of the company, where the in-

jury appears to be a mere wanton or malicious act upon the part of an employé, "acting at the time within the scope of his duty."

3. While the foregoing rule as to the amount and character of negligence which is required to render the company liable for an injury to a trespasser upon its road is upheld by a great preponderance of common law authorities, both in England and America, yet there are not wanting cases, especially in this country, which apparently hold it to the observance of much more diligence and caution in the prevention of such casualties, than is here demanded. "These cases," says the annotator of 6 American and Eng. Rwy. Cases, *ut sup.*, "seem to indicate that ordinary care will be exacted, and that, in the absence of such care, the company will be held liable." This is a guarded statement. It is not asserted positively that this rule is laid down in any of the cases, but that they seem to indicate it. One of the cases relied on for this indication of the rule is the Illinois Central Railroad *vs.* Godfrey, which, as we have seen, attaches this liability "to wanton or wilful injury, or such gross negligence as evinces wilfulness." It is true that the court, after announcing this rule, does go on to say, "if the defendant's servants who were in the management of the engine, after becoming aware of the plaintiff's danger, failed to use ordinary care to avoid injuring him, the defendant might be liable; and this, as we conceive, is the only measure of liability, under the facts of this case," etc.

This, we apprehend, is the extent to which the other cases cited in the note, have gone. Certain it is that our own court has gone no further, for in the case of *Baston vs. The Georgia R. R. Co.*, 60 *Ga.*, 340, Jackson, J., delivering the opinion of the court, says: "Even a trespasser upon the track of a railroad, is entitled to be protected from gross negligence. Human life is sacred, and if a human form appear upon the road, walking, or sitting, or lying down, some effort should be made to save life." There

is here nothing inconsistent, in this additional specification, with the rule for fixing liability laid down in the case, for if the engineer, after perceiving the plaintiff's danger, had failed to use every exertion to avoid injuring him, then it is quite clear to us that his failure, if it did not amount to wanton and wilful wrong, was such gross negligence as was tantamount to wilfulness. Indeed, it would have been criminal, and, according to our Code, would have rendered him liable to prosecution for an offence against the state. Code, §4586 (b).

The view here presented, accords, with one important qualification, with the several provisions of our own Code upon the subject, especially sections 2972 and 3034, which embody the principles of the common law as declared by the decisions of this court, rendered previous to its adoption, and which, so far as we can understand, have been followed in all subsequent decisions, including the case now under examination.

The first of the above sections will be found in Ch. II., Tit. VIII., of the Code. The subject of this title is, "Torts, or injuries to persons or property." Chapter II., under which this section is found, treats of "Injuries to the person," while the remaining section is to be found under Ch. III., Art. III., of the same title, which treats of "Injuries by Railroad Companies." By section 2972, it is provided: "If the plaintiff, by ordinary care, could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. But in other cases, (*i. e.*, in cases other than those in which, by ordinary care, he could have avoided the consequences, etc.,) the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained," while section 3034, enacts that "no person shall recover damage from a railroad company for injury to himself or his property, where the same is done by his consent, or is caused by his own negligence. If the complainant and the agents of the company are both at fault, the former may recover,

but the damages shall be diminished by the jury in proportion to the amount of default attributable to him."

Both branches of the rule of liability, as laid down in these sections of the Code, are traceable to, and derived from, decisions of this court, made prior to the adoption of that body of laws. As to the first branch of the rule, see, among other cases, *M. & W. R. R. Co. vs. Davis*, 18 *Ga.*, 684; *Central R. R. Co. vs. Davis*, 19 *Ib.*, 437; and as to the second, relating to contributory negligence, *M. & W. R. R. Co. vs. Davis*, 27 *Ib.*, 113, and *Yonge vs. Kinney*, 28 *Ib.*, 111. In *M. & W. R. R. Co. vs. Johnson*, 38 *Ib.*, 431 and 432, this court recognized the view here presented as to the origin and source of the law as embodied in these sections of the Code. Subsequent decisions have not deviated from this line, as to liability for negligence. In *Vickers vs. The Atlanta and West Point Railroad*, 64 *Ga.*, 308, Bleckley, J., said: "Whether it," (the presumption which, under Code, §3033, imputes negligence to the company, upon the proof of the injury, and requires upon the part of its agents, the exercise of " all ordinary and reasonable care and diligence "), " is overcome or not, if the plaintiff either caused the injury, by his own negligence, or could, by ordinary care, have avoided it, the verdict should still be for the company." In a case where the injury was to personal property, the same learned judge (in *Geo. R. R. & Bkg. Co. vs. Neely*, 56 *Ga.*, 543,) after citing Code, §§3033, 3034, used this language: " If the plaintiff consented to the injury, the matter is plain. If his own negligence was the sole and only cause of it, there is still no difficulty; for the establishment of that affirmative either negatives the fact of negligence on the part of the company's agents, or renders the fact immaterial. Of course, however negligent these agents may have been, if the plaintiff's negligence was the sole cause of the injury, their negligence was no part of the cause; hence, its immateriality." And in a subsequent part of the same opinion, comparing these sections of the Code

with §2972, and considering how far that is applicable to other injuries than those to the person, he says, p. 544, of this latter section: " It applies, in terms, to personal injuries, and if its meaning can be extended to injuries affecting property, it would seem to be applicable only where the plaintiff's duty is to act after the defendant's negligence has commenced and become apparent. When the consequences of a present or antecedent negligence are impending, whoever can shun them by ordinary care and fails to do so, ought not, perhaps, to be heard to complain of them, whether they touch his person or his property." In *M. & W. R. R. Co. vs. Johnson*, 38 *Ga.*, 431, McCay, J., speaking for the court, applies the rule denying a right of recovery to the plaintiff, if, by ordinary care, he could have avoided the injury to himself caused by the defendant's negligence, to railroads as well as to natural persons, and characterizes it as a wise as well as a just rule. He adds, that "the man who neglects ordinary care to avoid an injury, has no just right to seek redress, if that injury is produced by the negligence of another, and we see nothing in the character of a railroad company which should subject it to damages for an injury caused by the neglect of its agents, where the person injured might, by the exercise of ordinary care, have avoided the consequences to himself."

In the present case, the question here made is *res adjudicata*, and is not open to review. 64 *Ga.*, 475. It is there stated that the company may relieve itself of damages by showing that its agents have exercised all ordinary and reasonable care and diligence to avoid the injury ; or it may show that the damage was caused by plaintiff's own negligence ; or it may further show that the plaintiff, by ordinary care, could have avoided the injury to himself, although caused by the defendant's negligence.

It must be further borne in mind that, by Code, §3033, the presumption of negligence is, in all cases (except suits brought by employés, Code, 3036), against the company, where it is shown that the damage complained

of has been done " by any person in the employment and service of the company." This rule, (omitting the foregoing exception), like the others, is taken from the common law, as might be shown by a reference to the numerous text writers and cases on the subject. In N. J. Ex. Co. *vs.* Nichols, 33 N. J. R., 439, the supreme court of that state held, " that the plaintiff was not, as a condition precedent to maintain his action, bound to prove affirmatively that the injury was contributed to by his own negligence, under the penalty of a nonsuit." If, however, the plaintiff's own testimony shows that the damage was caused by his own negligence, or that, by the exercise of ordinary care, he could have avoided it, the defendant, in order to defeat a recovery, would not be bound to make these facts more apparent by the production of additional testimony. Tested by these rules, is this a case in which a recovery was proper?

The plaintiff was not an infant of tender years at the time of this casualty. He was over fifteen years of age, fully capable of perceiving and appreciating the perils of the situation in which he placed himself; he was in a place where he had no business to be; the place was at all times dangerous, and under the circumstances of this transaction, peculiarly so. He was there for his own pleasure and convenience, not for any purpose of business with the company or its agents. He was not there either by the express license or encouragement of the defendant or or any of its agents. He saw the train more than a quarter of a mile off, approaching at a rapid speed; he leisurely pursued his walk, meeting it, and remained on the track until it came very near him, when he got off upon the narrow path that runs by the side of the superstructure on which the rails were placed. This path was not more than four or five feet wide, perhaps not so wide. Another person, Rosa Silverburg, occupied a portion of it, and the plaintiff was standing between her and the train; there was no obstacle to prevent these parties,

when they left the track, from getting further from the passing train; the embankment, at the spot, was neither high nor steep; it sloped gradually, and could have been descended without inconvenience or risk; the plaintiff stood in the path where he first got upon it, until a considerable portion of the train passed him; he had ample time to have gone farther. These are the unquestioned facts, as shown from his own evidence. To them, should be added the further fact, as appears from the defendant's testimony, and which was not contradicted or explained, although if it had been possible to do so, there was ample opportunity afforded, that plaintiff had, before this occurrence, been in the habit of remaining on the track, while trains were running, until they got very near him; that, on one occasion, the section-master, while using a pole car, overtook him, and he stayed on the track until the car got very close to him, and the section-master "complained of his being in the way; did not exactly stop the car to get him out of the way, but had to slacken speed; complained to him twice, though he had only to slacken speed once; saw him on the track several times." The plaintiff was well aware that these cars passed the place at or about the time when this accident occurred. Now, upon every principle of law applicable to the subject, this conduct was perhaps nothing short of culpable negligence, even in one who was rightfully on the track, and it might and could have been easily avoided.

In such a position, the plaintiff should have been watchful and careful, and a want of this watchfulness and care makes him chargeable with negligence. "Slight circumstances may over-balance the presumption of freedom from negligence which we suppose to exist in favor of a plaintiff. Thus, his being found in a position of danger unexplained, or his free use of intoxicating liquors," etc., "or any evidence tending to show careless habits, should turn the scale." Shear. & Redf. Neg. §45. "The rule of diligence, says Lumpkin, J., in *Macon & W. R. R. Co. vs.*

*Davis*, 18 *Ga.*, 685, "will vary with the ever-changing facts which accompany and surround each given case; the true test, always to be applied, being, did the defendants use reasonable diligence; that is, the care and diligence which, taking into consideration all the circumstances of the case, the exigency required and admitted of?" "Ordinary care, however, as the phrase is here used, implies the use of such watchfulness and precautions as are fairly proportioned to the danger to be avoided, judged by the standard of common prudence and experience. If the danger is remote or slight, the care required to avoid it may be slight; if the danger is near and extraordinary, extraordinary vigilence should be used to avoid it, because such would be the course of a prudent man." Shear. & Redf. Neg., §30. "The probability of danger" is always "to be taken in view in determining, not merely the grade, but the existence of negligence." Wharton Neg., §47.

It would be a mere superfluous task to cite further authorities to a principle so fundamental in its nature, and one which the common sense and experience of mankind will readily recognize and appreciate.

Parties have an undoubted right to the use of public crossings over railways, but before going on these crossings, they should exercise caution and look out for danger; and, as a general rule, a failure to observe these precautions, where an injury is the result, may deprive them of the right to recover, even if the defendant has been remiss in making use of the ordinary signals of warning and other expedients, as the ringing of bells, the blowing of whistles, the slacking of speed, etc., for avoiding casualties. Especially is this so, if the injury was not occasioned by this omission of duty, and would have occurred if it had been fully and faithfully observed.

These questions have very recently undergone thorough examination, and have been very fully discussed by the supreme court of North Carolina, in the case of Parker, adm'r, vs. Wilmington and Weldon R. R. Co., 86 N .C. Rep.,

(s. c. 8 Am. and Eng. R. R. cases, 420). Smith, C. J., delivering the opinion, says: " The only possible imputation. upon the prudent conduct of the engineer is in the omission to give the warning in season to keep off persons about to cross, but even this does not dispense with all personal attention to one's own safety. If the omission be neglect in the company, much greater is the neglect of the deceased, who, when aware of the runnings of the regular trains, and just when one was expected, walks and remains upon the track without looking out for its approach, or making any movement to get out of the way,. until, rushing on, it strikes him to the earth. It is to be presumed that a rational being will not needlessly venture into places of peril, and if he does, that he will use proper precautions to guard against injury. If he fails to do either, and suffers damage in consequence, it must be regarded as caused by his own rash act and inattention to his own security."

" 'Negligence. is a relative term,' remarks the supreme court of New Jersey, in N. J. Ex. Co. *vs.* Nichols, 3. New Jersey, 439, " depending upon the circumstances. under which the injury was received and the obligation which rests on the party injured to care for his personal safety. A person crossing a railroad track, though rightfully there, must be on the alert to avoid injury from trains. that may happen to be passing.'

" 'The company's servants may ordinarily presume,' is the conclusion derived from an examination of numerous. cases by a recent author, whose work exhibits large research and precision of statement, " that a person of full age and capacity who is walking on the track at some distance before the engine, will leave it in time to save himself from harm ; or, if approaching the track, that he will stop if it becomes dangerous for him to cross it. This presumption may not be justified, under some circumstances,. as when the person on the track appears to be intoxicated,. asleep, or otherwise off his guard.' Pierce on Railroads, 331. ' The more approved statement of the doctrine of contrib-

·utory negligence,' says the same author, ' is that a person cannot recover for an injury to which he contributed by his own want of ordinary care.' *Ib.*, 323. The only culpability which can be charged upon the company is the failure to give the precautionary signal of the approach to an intersecting way, where travellers might be expected to be found, and thus prevent their moving upon the track; but this omission, when in no manner causing or contributing to the injury, does not impose a liability upon the ·company. If the traveller knew by other means of the ·coming train, the omitted warnings could not be deemed the cause of the collision. *Ib.*, 351.

" But, without accumulating references to the numerous ·decided cases, of which the defendant's counsel has furnished us many very much in point, we prefer to rest our ·decision upon the authority of a recent case, clearly resembling that before us, and in which a large array of cases ·was brought to the attention of the Supreme Court. Railroad Company *vs.* Houston, 95 U. S. Rep., 697. Mr. Justice Field says: ' If the positions most advantageous for the plaintiff be assumed as correct, that the train was moving at an unusual rate of speed, its bell not rung, and its whistle not sounded, it is still difficult to see on what ·ground the accident can be attributed solely to the negligence, unskilfulness or criminal intent of the defendant's ·engineer. Had the train been moving at an ordinary rate ·of speed, it would have been impossible for him to stop ·the engine when within four feet of the deceased. * * The failure of the engineer to sound the whistle, or ring the bell, if such were the fact, did not relieve the deceased from the necessity of taking ordinary precautions for her safety. Negligence of the company's employés in these particulars was no excuse for negligence on her part. She was bound to listen and to look before attempting to cross the :railroad track, in order to avoid an approaching train, and not to walk carelessly into the place of danger. Had she :used her senses, she could not have failed both to hear and

to see the train which was coming. If she omitted to use them, and walked thoughtlessly on the track, she was guilty of culpable negligence, and so far contributed to her injuries as to deprive her of any right to complain of others. If, using them, she saw the train coming, and yet undertook to cross the track, instead of waiting for the train to pass, and was injured, the consequences of her mistake and temerity cannot be cast upon the defendant. No railroad company can be held liable for a failure of experiments of that kind.'"

In *Southwestern R. R. vs. Johnson,* 60 *Ga.,* 667, this court held that where the plaintiff's husband, at the time he was killed, was lying upon the defendant's railroad track, where the public road crossed the same, she could not recover, although the defendant "was negligent in not blowing its whistle at the proper time at crossing the public road, and checking up its train of cars," because the deceased, "according to the evidence, could, by ordinary care, have avoided the consequences to himself caused by the defendant's negligence." It cannot be claimed in this case, that the plaintiff's injury was caused by the unusual speed of the train, or by the failure of the company's agents to blow the whistle or ring the bell, for the plaintiff had seen the train a long distance off, and appeared quite indifferent as to its approach, he neither felt nor manifested any apprehension of danger from a collision, he leisurely pursued his way until it came quite near him. When he got upon the side path, he did not get far enough from the cars to prevent his being stricken by a plank or piece of timber projecting some six or eight feet beyond the side of the platform car, but was, as he insists, at a sufficient distance to avoid collision with the cars. This was the only negligence, if negligence it can be considered, on the part of the defendant, to which he can attribute the injury he received. The evidence leaves it very doubtful whether the injury could have been caused by a blow from this plank or timber. It projected so far beyond the place where he was standing, that

the end of it could not have scraped the side of his jaw,. even though he threw his head back when he saw the projecting plank. According to his own account, he was three feet from the track at that time, and the plank projected six or eight feet from the car; the blow, which was a "glancing blow" and "just did scrape his jaw," had sufficient force to "knock him down," and to draw him under the wheels of the passing car, which inflicted upon him the serious injury that maimed him for life. It is probable that he is mistaken as to the manner and source from which he received this injury. A blow from the plank might have thrown him from, instead of under, the train, according to the angle made by the projection, as to which there is no proof. If the plank had projected only six feet, and he was three feet from the track, then he must have been stricken about midway the distance it projected. The persons on the train place him much nearer the cars than three feet, and their version of the affair seems well sustained by the circumstances attending the catastrophe. It is not improbable that he came in collision with the stirrup that held the standards on the car, and that the collision thus brought about threw him under the train, and caused the injury; his companion was standing further from the cars than he was; she was on the outer part of the path, and a "little in front of him," and received no injury. True she was not as tall as he was, but the evidence does not show the difference in their height, or whether she was tall enough to have been reached either by the side of the car or the plank resting on and projecting from it. Besides, if the damage was done by this plank or piece of timber, it appears to us, that it would, in all probability, have been fatal, for when it came in contact with an upright iron switch, a short distance from the scene of the disaster, the collision was so violent that it shattered the switch, and left a deep dent in the timber itself. This casualty, we apprehend, should be attributed to the plaintiff's temerity. He should have left the track some time be-

fore, as the other children then on it much more prudently did; then he would have had ample time and opportunity to have looked about him and to have avoided the danger. If, seeing the approaching train, and knowing the danger of meeting it, as he must be presumed to have done, he tried to see how near he could get to it without injury, the defendant should not be held responsible for the result of the experiment; and if, when he did leave the track, he made a mistake as to how near he might stand with safety to himself, surely the railroad company should not be charged with the consequences of this mistake. It was claimed, however, by the defendant, and we think rightly, that this party was *ab initio* a tresspasser upon its track and embankments, and was such as long as he remained there; and while it is conceded that it would be liable for a wanton or wilful wrong of its agents, acting within the scope of their duty, or even in cases of gross negligence or carelessness, evincing reckless disregard of the safety of others, or where they perceived the danger of a party in time, and made no effort to avert it, yet it maintains that it is under no such obligations to trespassers as to those who are properly and lawfully upon its premises, for the purpose of either transacting legitimate business with it, or in furtherance of rights reserved to them by law.

In view of the fearful frequency of the unauthorized use of railroad tracks and embankments as foot paths, and of the perils to which pedestrians, as well as the trains themselves, the persons managing them, the passengers and freights with which they are loaded, are constantly exposed from this highly reprehensible practice, it may be well to state at greater length than has already been done the relative rights and duties of parties to suits brought for redress of injuries happening under such circumstances. In the case of Mulherrin *vs.* Delaware Lack. and W. R. R., 81 Penn. St., 366, already referred to, the supreme court of Pennsylvania says: "The company have not only a right of way, but such right is exclusive at all times

and for all purposes. This is necessary, not only for the company's rights, but also for the safety of the travelling public. It is not right that the lives of hundreds of persons should be placed in peril for the convenience of one single fool hardy man, who desires to walk upon the track. In England it is a penal offence for a man to be found unlawfully upon the track of a railroad (3 and 4 Vic., Ch. 97, §16). It would add materially to the public safety, were there a similar law here." It would be a striking anomaly, were railroad companies held to the same measure of care for the safety of mere wrong-doers as for those engaged in their service, or placed under their care, or who are authorized by the law to use the crossings over their tracks, or to visit their stations or other portions of their road upon business connected with them; but the law tolerates no such absurdity; it recognizes and enforces a clear distinction in this respect as to these different classes of persons. It requires diligence in proportion to the duty imposed, and the degree of negligence imputed must correspond to the degree of diligence exacted. Wharton Neg., §48. " In determining the care and diligence to which any one is bound, it is necessary to distinguish first between the obligations of persons who do, and of those who do not stand in peculiar relations to one another. It is the duty of every man to conduct himself, and to manage his property with ordinary care and diligence, and with no more than that, unless he has increased or diminished his responsibility by assuming some special relation with the person who seeks to enforce it. But if one does an act of pure favor for another, with the assent of the latter, his responsibility to him is reduced to the duty of merely slight care and diligence, to which extent, however, he is bound. And on the other hand, the party receiving the favor is bound to exercise great care and diligence therein for the benefit of the party conferring it." Shear. and Redf. Neg., §22; Central R. R. *vs*. Henderson, decided at this term. But as " the common law has a peculiar regard

for human life, and for this reason exacts a greater degree of care when life is at peril than in relation to any matter of mere property, it requires from all persons, including those who render gratuitous services, at least ordinary care for the safety of life." *Ib.*, §24. There is certainly a difference as to the degree of care to be observed by the company's servants to one who avails himself of a gratuitous privilege and a wrong-doer. The case of Illinois Central Railroad Company *vs.* Godfrey (71 Ill., 507), taken in connection with the foregoing, will make this distinction plain. "Where both parties are equally in the position of right, which they hold independent of the favor of each other, the plaintiff is only bound to show that the injury was produced by the negligence of the defendant, and that he exercised ordinary care or diligence in endeavoring to avoid it. But where the plaintiff is himself in the wrong, or not in the exercise of a legal right, or was at the time enjoying a privilege or favor granted without compensation or benefit to the party granting it, and of whose carelessness complaint is made, he, the plaintiff, must use extraordinary care, before he can complain of the negligence of another. Aurora Branch Railroad Company *vs.* Grimes, 13 Ill., 585." To the same effect is Shear. and Redf. Neg., §491, and cases cited in notes there.

How do the cases determined by our own court accord with these views and principles? In an early case (*Flanders vs. Meath*, 27 *Ga.*, 358), the plaintiff, a child of tender years, was seriously injured by a dray passing down the streets of Macon, at a very rapid rate. There was a school which plaintiff attended, just opposite her parents' residence and the place where the injury was inflicted; in this part of the street the school children were in the habit of playing. On this occasion a rain was coming up, and the dray was partially loaded with meal and flour; the plaintiff ran in front of the mules, passed their heads, and was caught under the hind wheels and injured. She had been in the habit of thus running before passing drays and

other vehicles on the streets, and came near being hurt on several occasions previously. Her parents were informed of this and told, if they did not keep her out of the streets, she would some day be injured. The jury found a verdict of $50 in her favor, a new trial was moved for and granted, because of the inadequacy of the damages. This court reversed the judgment granting the new trial, and held that, notwithstanding the jury might think the person injured altogether in fault, yet, if from pity, or any other consideration they should return a verdict for damages, and the defendant acquiesced in it, the plaintiff could not complain and demand a new trial, although her injury was serious and the damages found were almost nominal; thus clearly intimating that had the defendant sought to set aside this verdict by moving for a new trial, his motion should have been granted. In *Sims vs. Macon & Western Railroad Co.*, 28 *Ga.*, 93, the plaintiff's slave, who was killed by the train, had seated himself upon the end of a cross-tie; the train was visible at the distance of 1000 yards; the negro had probably fallen asleep, and neither saw nor heard the approaching train. The engineer did not blow the whistle, nor did he slacken his speed at which he was running until he got too close to avoid the collision. Under these circumstances a nonsuit was awarded, and properly so, as this court held. The conduct of the negro was deemed "gross negligence," which deprived the plaintiff of his right to recover damages. Benning, J., who delivered the opinion, said: "Whether the negro was awake or was asleep, we cannot know. But, at first, the engine man had the right to presume he was awake. He was sitting up, not lying down— sitting on the end of a cross-tie. This commonly is the attitude of a person awake. The engine man, then, had, at first, the right to presume the negro to be awake. And whatever presumption he had the right to make, he had the right to act on." Again in another part of the same decision, this able and enlightened judge declares, "If a

person on a railroad track, as a trespasser, is aware of the approach of a train, it is his duty to get off the track, out of the way of the train, and it is not the duty of the engine man to stop the train, or even to blow the whistle; certainly it cannot be his duty to blow the whistle until the train has come almost quite up to the person. Of what use could it be? This, I suppose, will not be disputed." In *So. West. R. R. vs. Hankerson* (61 *Ga.*, 114), Hankerson was lying on the track, just beyond the crossing, in a state of insensibility, whether from drunkenness or a sudden accession of disease, the evidence leaves in doubt; he was seen by the engineer at the signal post, who mistook him for a hog that had been killed by a freight train just ahead of him; did not discover that it was a man until he got within 100 or 125 yards of him, when he immediately used all the appliances at his command to awaken him and to stop the train, but did not succeed; the train ran over and injured him. Warner, C. J., said in delivering the opinion of the court: "If the plaintiff was voluntarily drunk, and in that condition placed himself on the defendant's railroad track, he was not entitled to recover at all, under the provisions of the 2972 section of the Code, whether the defendant was negligent or not. But if he was not drunk, and could not have controlled his powers of locomotion from a sudden attack of disease or other involuntary cause, and in consequence thereof was involuntarily upon the defendant's railroad track, then the question of negligence might have arisen under the provisions of the 3034th section of the Code." In *The Georgia R. R. & Bkg. Co. vs. Nasby*, 56 *Ga.*, 540, a verdict given on account of contributory negligence in the killing of a mule and crippling a colt by the train of defendant, under the following facts was set aside by this court: The plaintiff, who lived near the railroad, hobbled the mule, and turned it and the colt out at night to graze; they got upon the track, and were seen ahead of the train, as far as the head light would enable the engineer to perceive them. He used

v 70-16

all the means in his power to stop the train, but could not do so, on account of being on a down grade, nor was he more successful in frightening them from the track by the use of the whistle.   Bleckley, J., delivering the opinion, said: " On scrutinizing the evidence before us, we are of opinion that the company's agents were not wanting in ordinary care or reasonable diligence; and that the verdict which was rendered on the basis of contributory negligence cannot be upheld.   The evidence is not conflicting or inadequate.   The burden of proof, cast by law on the defendant, has been removed."

So too, in the case of *Vickers vs. The A. & W. P. R. R. Co.*, 64 *Ga.*, 306.   Where a child of ten years of age was allowed, with others, by the defendant's employés to get on and jump off the cars while in motion, and the engineer in charge, only one or two days before the injury occurred,. put the plaintiff on the engine while in motion, and then and there bought ground-peas from him, for which he did not pay, and told him to come back for his pay on the day of the injury, and plaintiff, in compliance with the request, returned, and in jumping on the engine while in motion, fell through, and the train ran over his leg and crushed it, so that amputation was necessary, and the court below awarded a non-suit, this court, reversing that decision,. held that where the law raises a presumption of negligence against.the defendant by reason of the mere fact that the physical injury was inflicted by means of running its locomotive, and where, owing to special circumstances touching the conduct of the engineer toward the plaintiff,. a child of only ten years of age, it is not altogether certain that the presumption is rebutted; and where on account of the plaintiff's tender years and his consequent immaturity of understanding, he is not amenable to so high a standard of diligence in regard to his own safety as that which adults are obliged to observe, the case made by the plaintiff's evidence is more properly one for the jury than the court, and a motion for a non-suit should be denied.

In discussing the propriety of this non-suit, Bleckley, J., remarks: "The present is not quite a case for a non-suit, though its neighborhood to that class seems very near." In our case, the injured party had attained an age (fifteen) when by law the immaturity of his understanding was not to be presumed as freeing him from the consequences of his own voluntary act, Code, §4294; but under ten years, and between that and fourteen, the presumption is otherwise; he is not to be held accountable unless he knows the distinction between good and evil; or at or below ten years of age, unless it be shown from the evidence that he is "impressed with a sufficient sense of moral obligation," or is "possessed of sufficient capacity to have deliberately committed the act with a full knowledge of its consequences." *Ib.*, 4295. While this section of the Code relates to an infant's accountability for criminal offences, yet in cases of tort, he is equally responsible, provided he has reached those "years of discretion and accountability" prescribed by the Code for such offences. *Ib.* §3064.

But the difference between this case and the one under examination does not end here. In Vickers' case, the boy of ten was invited on the engine, while it was in motion, by the man having charge of it; in this, no such invitation or inducement was held out. On the contrary, complaint had been made, by at least one of the employés of the road, of his intrusion upon its track and embankment.

But it was urged by the distinguished counsel for the plaintiff, who, when on the bench of the superior court, determined the case of *Baston vs. The Georgia R. R. Co.*, reported in 60 *Ga.*, 339, that the present case is precisely within the rules laid down by this court in that, in reversing the judgment awarding a non-suit by the lower court. We respectfully differ from our learned brother; the cases are essentially different in most of their features.

We do not intend, by anything we have said, to intimate an opinion, whether a non-suit in this case would have been proper. No such question was made in the lower

court, and we abstain from going outside the record to search for points, which may possibly not arise in the further progress of the litigation, and by anticipation, to forestall their discussion and investigation. When this question shall properly come before us, if it ever does, it will be time enough to determine it. In that case, the plaintiff was upon the defendant's line of railway by its consent, walking on the track at a certain point, about nine o'clock at night; when the train came behind him in the dark, he stepped six or seven feet from the track,—far enough ordinarily to be secure from danger from the running of a train, but was prevented from going further by a hedge or thicket of briers left growing on defendant's right of way; several trains passed him in safety to himself when a piece of timber, projecting from one of the rear trains, struck him on the head, felling him to the ground and injuring him seriously; this injury was the result of gross negligence on the part of the defendant in loading its cars with freight in such an unusual manner, and in permitting the piece of timber to project so far off of the track of its road. Jackson, J., delivering the opinion, remarked: "Taking these allegations to be true, the plaintiff would be entitled to recover. Even a trespasser upon the track of a railroad is entitled to be protected against gross negligence. . . . . But this is the case of a man going from one point to another on the track of the road, by its consent, and who, therefore, is not a trespasser, but was entitled to greater consideration than a mere trespasser would be entitled to claim." The judge then goes on to show that these circumstances, all taken together, as we understand the decision, made out a case of gross negligence on the part of the defendant.

Now, mark the difference between this case and that under consideration. In the latter, there was no consent upon the part of the company, either express or implied, that the plaintiff should use the road in the manner he did. It was not pretended that there was any express consent;

but an attempt was made to imply consent from the frequent use of the track and embankment by the plaintiff and others, in a similar manner and for like purposes, without effort on the part of the defendant to prevent it. In this case, the plaintiff was on the track in the day time; in that, in the night. In the one, anything that threatened danger, as the projecting timber, was plainly visible to one on the alert and making proper use of his senses; in the other, on account of the darkness, it was not discernible, however vigilant the plaintiff might have been. In the one, there was no obstacle to prevent the party from going further from the passing train; in the other, there was, and that obstacle was allowed by the company to remain there. In the latter, it appears positively that the train was negligently loaded, and that, by means of this negligent loading, the timber which did the damage projected an unusual distance from the car, over the track; whereas, in our case, the train was examined upon starting from McBean's station, thirty miles off from the place of the accident, and found in perfect order. It was not a loaded train, and the piece of plank or timber that was alleged to have caused the injury was not seen to project, until within about two miles of Lawtonville, where an attempt was made to call the attention of those in charge of the train to the fact; but the signal given was not understood. The inference is clear that, in starting, this piece of timber was in its proper place, and was jostled out of position during the run, and was not discovered by the train hands in time to replace it. The empty train was going for a load, and did not stop at the customary stations. In Baston's case, it must be taken as true that the injury complained of was certainly done by the projecting timber; while in this, the probabilities are that it was not done in any such manner, but by contact with the cars. In that case, timely effort was made, and the party got a reasonably safe distance from danger, under ordinary circumstances, at least as far as he could go without run-

ning into the thicket of briers; in this, there was no effort made to escape danger, until the train was close up to the plaintiff, and then he did not leave the track further than three feet, although there was nothing to prevent his going further and beyond the reach of all danger. In that case, as before remarked, the plaintiff, from the darkness of the night, by the use of the utmost vigilance, could not have perceived his danger, and made proper effort to avoid it; but this damage occurred in the broad light of day. If any, the least, vigilance had been used, the projecting plank could have been seen; and when seen, contact with it might have been avoided by stooping low or sitting down, if not by a retreat down the embankment. From some evidence in the record, it seems that the attention of the plaintiff was, at that time, fixed on the car-wheels rather than upon the body or bulk of the train or its load.

6. Whether the consent of the company can be implied from such use of the track by unauthorized persons as that set up in this case, has been seldom directly passed upon by our courts, so far as we can find; but it has been repeatedly passed upon by the courts of some of our sister states, and by them settled, upon principles, as it seems to us, too clear for doubt, some of which we have already discussed, as those relating to the company's right to the exclusive use of its road-bed, embankments and cuts, and the obligation and duty of others to abstain, without its consent, from their use, except at crossings, where the public have a right of way.

To consent is one thing, and is quite different from mere forbearance, on the part of the defendant, to seek redress, whenever its rights are temporarily invaded by a wrong-doer. By endurance or toleration of a trespass, we do not understand that any of a party's privileges and rights are necessarily waived or yielded, or that it ceased to be entitled to the protection afforded by the law. By direct consent to the use of its way, it certainly waives any right

to proceed against one thus found thereon, for any wrong that may be imputed on account of such use. There can be no right set up by the public from mere user, however frequent or long-continued it may be. It is so inconsist·ent with the rights and obligations of the company that it cannot, without more, be presumed to have consented to it; least of all, can it be claimed, with any show of reason, that the right of the public has, by such facts, become ad·verse to the right of the owner of the road. That this ad·verse holding is essential to the right set up here, and which it is insisted the defendant was bound to respect, and that it must be derived from the consent of the owner, see Irwin *vs.* Dixion *et al.*, 9 Howard R., 10. It is not be·lieved that any length of forbearance to take legal pro·ceedings against trespassers, or to warn them from the bed on which a railroad track is constructed, will amount to a dedication of the same to the use of the public, as a way for pedestrians. No such case has been brought to our attention, and our own research has discovered none. If such a one existed, we are satisfied that it would be in direct contradiction to principles too long and too firmly established to be called in question at this late day. "If the owner of lands," declares our Code, §2684, "either ex·pressly or by his acts, dedicates the same to public use, and the same is used for such a length of time that the public accommodation or private rights might be mate·rially affected by an interruption of the enjoyment, he cannot afterwards appropriate it to private purposes."

When a railroad company, by authority of law, goes into possession of land for the objects of its creation, is not that an appropriation to certain great specified public uses? And can it divert its use to purposes wholly inconsistent with those which it is authorized to pursue,—purposes which may imperil the lives and property of travelers and freighters on its trains, without incurring a forfeiture of its privileges? To ask, it seems to us, is to answer these questions. Now would it be fair to presume that, from

its inability, or reluctance, from prudential or other laudable considerations to prosecute or warn off trespassers from its track, that it thereby consented to its appropriation to uses wholly inconsistent with its obligations and duties to the public? It might be sufficient to answer, that upon principle and authority, no such presumption arises. This conclusion, however, is fully sustained by the cases.

In the case of the Illinois Central Railroad Company vs. Godfrey, already referred to in this opinion, it is said, (71 Ill. R., 506): "The plaintiff was traveling upon defendant's right of way, not for any purposes of business connected with the railroad, but for his own mere convenience, as a footway, in reaching his home, on return after a search for his cow. There was nothing to exempt him from the character of a trespasser and wrong-doer for so doing, further than the supposed implied assent of the company arising from their non-interference with previous like practice by individuals. But because the company did not see fit to enforce its rights and keep people off its premises, no right of way over its ground was thereby acquired. It was not bound to protect or provide safeguards for persons so using its grounds for their own convenience. The place was one of danger, and such persons went there at their own risk, and enjoyed the supposed license subject to its attendant perils. At the most, there was here no more than a mere passive acquiescence in this use. A mere naked license or permission to enter or pass over an estate will not create a duty, or impose an obligation on the part of the owner to provide against the danger of accident. Sweeny vs. Old Colony, etc., Rwy. Co., 10 Allen, 373; Hickey vs. Boston & Lowell Rwy. Co., 14 Ib., 429; Phila. R. R. Co. vs. Hummell, 44 Penn. St., 375; Gillis vs. Penn. Rwy. Co., 59 Ib., 129.

For all the purposes of this suit, the plaintiff stands in no more favorable condition than that of a wrongdoer and trespasser. He was not, at the time of the accident, in the

exercise of a legal right, and was in the enjoyment of no more than a bare license or assent tacitly given, and his duty and the obligation of the company are to be measured as in the case of one thus situated." In confirmation of this ruling, we cite Illinois Cent. R. R. *vs.*. Hetherington, 83 Ill., 510; Finlayson *vs.* Chicago R. R. Co., 1 Dillon, 579; Galena, etc., R. R. Co. *vs.* Jacobs, 20 Ill., 478; Bancroft *vs.* Boston, etc., R. R. Co., 97 Mass., 276; Nicholson *vs.* Erie R. R. Co., 41 N. Y., 426; Sutton *vs.* N. Y. Cent. & H. Riv. R. R. Co., 66 *Ib.* 243; Matz *vs.* N. Y. Cent. & H. Riv. R. R. Co., 1 Hun, 417.

That the plaintiff was a trespasser, is equally as clear from the Code as from these several decisions. "The right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a cause of action. Code, §3013. "Bare possession of land authorizes the possessor to recover damages from any person who wrongfully, in any manner, interferes with such possession." *Ib.*, 3015. Again, and still more pointedly, is the following: "The owner of realty having title downward and upward indefinitely, an unlawful interference with his rights, below or above the surface, alike gives him a right of action." *Ib.*, §3020. So, such an interference "with a right of way or of common is a trespass to the party entitled." *Ib.*, §3021.

It is not perceived how this principle can be affected by a difference in locality, as in a town, city, village or county, or by the number of persons violating the right, or the frequency or length of time in which it is violated by any or all of those taking such unwarrantable liberties. Circumstances alter cases, but principles never; circumstances vary constantly, but principles are permanent and unchangeable, however numerous and diversified may be the facts to which they apply. In the case of the Illinois Central R. R. Co. *vs.* Godfrey, the injury in question occurred in the incorporated town of Decatur. A large number of the inhabitants of that town were in the habit,

and had been for a long time, of using the railroad track there as the plaintiff used it when he was injured; an ordinance of the town required the slacking of speed and the use of cautionary signals when the trains were running through it, but which does not appear to have been done. It was held that no license could be implied from such customary use of the track, and the plaintiff could be regarded in no other light than a trespasser; and what is true of this case, is quite true of some of the others above cited.

The case of *Holmes vs. The Central Railroad Company,* *37 Ga.,* 393, forms no exception to them, in any material respect. "The spot at which the engine killed the plaintiff's slave (in that case) was seventy or eighty yards from the public road; but it was on a part of the track used very much by foot passengers to make a short cut from one to another of the public roads which was known to defendant's agents. It was down grade at that point, and the view was there obstructed by a cut. The killing took place near midnight. The blow posts were not at such distance from the public crossings as was required by law, and it was doubtful, from the testimony, whether the engineer blew the whistle when he passed the blow posts. The engine was going at the usual speed at the time; the slave was on the track, but not standing up; the engineer did not see him until he was struck by the engine and then supposed he was a hog or a sheep."

Among other things, Judge Gibson, of the superior court, charged the jury "that the track of a railroad company is not a public highway; and persons who use the same in pursuit of their ordinary private business, except at a public road crossing, are actual trespassers;" and this court addressing itself to that portion of the charge said: "By the act," (regulating the conduct of trains at public crossings) "certain things were required to be done by railroads, and certain liabilities incurred, in case of failure. This act was intended for the protection of persons and

property at public crossings of the road. The public have a right to cross the railroad track at the public road crossings. When traveling the highway, persons are lawfully on the railroad track at the point of crossing; and if an injury is done at such public crossing, then the provisions of the act of 1852 become material. In this case, the accident having occurred elsewhere, the provisions of the act are not applicable. The fact that so many persons traveled on foot over the portion of the road where the negro was killed, did not make the railroad a public road." In connection with this, and a little further on in the case, it is said, "The negro was on the road of the defendant at a point where he had no right to be."

This decision settles two pionts, viz.: that such use of the railroad track is a trespass, and that the consent of the company thereto can not be inferred from its habitual use, although its agents were well apprised of the fact that it was thus used. It is true, in this case, that the judge in the lower court refused to charge, at the request of the defendant's counsel, that the defendant was not liable, unless guilty of gross negligence, and that this court approved the refusal; but it is also true that this court held that the new trial, setting aside the verdict in favor of the plaintiff, was very properly granted, on the ground that the verdict was against the evidence. It would be a mistake to suppose that the conclusion here is based upon the ground that the defendant was not guilty of gross negligence, in the absolute and statutory sense of that term. Under the numerous cases cited from our own reports, it is quite apparent that complete protection is afforded the defendant, 1st, where it is shown that "all ordinary and reasonable care and diligence" have been exercised; 2d, where the plaintiff could, by ordinary care, have avoided the consequences to himself, although caused by the defendant's negligence; 3d, where the injury is done by plaintiff's consent, or is caused by his own negligence.

These rules are taken from Code, §§2972, 3033 and 3034,

each of which is an essential part of an entire scheme. As a whole, they relate to the same subject, are *in pari materia*, and should be so construed as to harmonize them, and at the same time to give effect to each particular portion of them. It should be observed that the judgment granting a new trial, in the last cited case, was put upon section 3033 of the Code, and that the other two sections were neither cited nor commented upon by the judge delivering the opinion.

It has been shown, in the course of this opinion, that even where the plaintiff could, by ordinary care, have avoided the injury caused by the defendant's negligence, or where it is solely attributable to his own negligence, yet if the conduct of the defendant was so grossly negligent as to evince wilfulness, or if he perceived the plaintiff's danger in time to have averted it, and made no proper effort to do so, then he would be liable for the consequences. This addition is essential, as it seems, to carry into full effect the evident design of the Code, although that purpose may not be therein expressed in terms. The term "gross negligence," used in connection with such circumstances, has a relative, rather than an absolute and strict signification, and as thus used, is the equivalent of acts which result from a failure to observe that "ordinary and reasonable care and diligence," prescribed by our Code. It was certainly used in this connection in all the cases herein cited, including that of *Baston vs. The Georgia R. R.*

The complaint made in this case by one of the defendant's employés to the plaintiff, and the warning thus given him of the danger he incurred by using this track and embankment as a footway, deprives him of the right to complain of the injury he brought upon himself by his failure to heed this friendly admonition and caution. Hughes *vs.* Macfie, 2 Hurlst., and Colt., 744. In Chicago and N. West. R. R. *vs.* Smith, 46 Mich., 504: "A child, eight years old, was injured by the sudden starting of a locomotive, on the step of which he had been standing, and from

which he had just been ordered away by the fireman. He was a trespasser on the premises, had been warned against going there, and had more than ordinary intelligence. It was held that the company could not be made liable, without proof that the employés knew that he was in the way at the moment, or were reckless or negligent in their management, or could have anticipated the injury." This, we apprehend, is a fair statement of the rule of the company's liability, under the circumstances disclosed by the record before us, and we adopt it as our own.

*The Central R. R. vs. Glass*, 60 *Ga.*, 441, bears no resemblance to the present case, and is wholly unlike it in all its material features. Glass got on the cars of the defendant, drunk, with the knowledge and consent of its conductor. Failing to give up his ticket when called upon, he was carried past three stations, and when in three-quarters of a mile, or a mile, of the fourth station, he was put off by the conductor and brakeman, while still drunk, on an embankment, which was two hundred yards from a crossing, he saying that he would walk to Jonesboro, but started in the opposite direction. When he got about a mile off, he laid down on the track, and was run over and seriously hurt by the up train from Macon to Atlanta. Although the conductor and engineer of this train had been notified that he was put off at this point by the down train, and requested to keep a lookout for him; they failed to do this. The verdict in his favor was properly sustained by the lower court and by this court. Glass was rightly on that train as a passenger, and was under the care of the agents of the road. If put off for failing to produce a ticket, he should have been ejected at some station or other safe place; and in his then drunken and helpless condition, he should not have been dumped off without his safety being looked after. The difference between that case and this is most marked. Not to mention others, the plaintiff here was on defendant's track, without the knowledge of its agents, and in defiance of their warning and request to

keep off the track. They had no agency in placing him there; whereas, in the other case, the plaintiff was placed in his dangerous situation by the company's servants.

Believing that the defendant's conduct amounted to gross negligence, and that, by the exercise of ordinary care, the consequences to himself could have been avoided, it follows that this verdict should have been set aside and a new trial granted, upon the ground that the finding is contrary to law and evidence.

7. But this is the third finding by juries in this case. On the first trial, the verdict was for $10,000, which was set aside by this court, because of erroneous charges by the presiding judge; the second was for $12,500, which was set aside for the irregular and improper conduct of a juror, and no writ of error was taken to that decision of the court below. In the present trial, the finding for the plaintiff was $11,500, and a motion was made to set it aside and a new trial asked, among others, upon the ground that this finding is excessive, and not warranted by the law and the testimony in the case. If the plaintiff was entitled to recover at all, he was only entitled upon the idea that the defendant had contributed to the negligence that resulted in the injury for which he sought damages; indeed, this is the sole ground upon which his right was urged by his able counsel in this court. Under this view, this finding is so excessive as to lead us to infer if not bias for the plaintiff, and prejudice against the company, at least a total misapprehension by the triors of the principles of law which were given in charge by the judge trying the cause. Code, §§3067, 2947. *The Savannah F. and W. R. R. Company vs. Harper*, decided at this term, in which the cases upon the subject are collected and reviewed.

8. Exception is taken to this charge of the judge given without qualification, at the request of plaintiff's counsel :

"A railroad company is bound to use ordinary care in the running of its trains, to prevent them from coming in collision with the person of another; and this it is bound

to use, even if that other is, on his side, in some degree negligent; therefore, if damage happen to such other person by a collision, which the company, by the use of ordinary care, might have prevented, the company must make good the damage."

It is objected by defendant's counsel, that the case put, was clearly one of contributory negligence and that his honor told the jury, "the company must make good the damage," from which they were left to infer that they were at liberty to find the entire amount of the damage done to the plaintiff, without making any abatement for the negligence chargeable to him. The error complained of is manifest. See this case 64 *Ga., ut supra,* and Code, §§2972, 3034, and cases cited in edition of 1882, under each of these sections. The judge certifies that, in connection with this request, he called the attention of the jury to his general charge. It does not appear, however, that he specified the portion of the charge that had relation to this particular subject. The portion of the charge referred to by him correctly laid down the measure of damages in cases of contributory negligence, and was in apparent, if not direct, conflict with the charge requested and given. The error complained of was not corrected in this way; the attempt to do so was well calculated to mislead and confuse, instead of enlightening, the jury. The charge should have been refused altogether, or the objectionable portion should have been stricken, and the rule prescribed by the Code for measuring damages in such a case substituted.

9. In taking leave of this case, it may not be amiss to call the attention of the general assembly to the growing evil of using railroad tracks and embankments as foot-ways, and to invoke their interposition to prevent, by appropriate legislation, a practice so fraught with peril, not only to the running of the trains and the passengers and freights upon them, but also as a safeguard and protection to the unwary and reckless, who commit such trespasses and take such frequent and frightful hazards.

The judgment of the court, as now constituted, is put upon the last ground only. It is proper to state, in this connection, that this opinion was prepared and written in accordance with what were understood to be the views, as expressed in several consultations with me, of our esteemed and lamented colleague, the late Justice Crawford.

After it was prepared, his extreme sickness forbade its being presented, and he had no opportunity of finally revising and of approving or disapproving, or modifying it.

Judgment reversed.

JACKSON, Chief Justice, concurring.

1. I concur in the judgment of this court granting a new trial in this case, on the ground that the court erred in charging the jury, as requested by the plaintiff below, to the effect that, though that plaintiff was himself negligent, the railroad company must make good the damage.

The words " must make good the damage," without qualification, would convey the idea that the company must, in such a case, pay full damage, and thus withdrew from the jury the consideration of the doctrine of contributory negligence as lessening the damage which the jury should give in such a case. No matter how negligent the company may have been, yet if the plaintiff was also negligent, full damage ought not to be given, but the damage should be diminished in the proportion which the negligence of the plaintiff bore to that of the company. So declares our Code, and so this court has ruled again and again. The doctrine was applicable to this case, and should have been considered by the jury and weighed in the scales of the evidence, and decided as their judgment on those facts determined, on a scrutiny of the negligence of both parties. The effect of the charge as given was to withdraw the contributory negligence of the plaintiff, if the

jury found that he did contribute, from the jury, and thus to hurt the defendant.

It is true, that in the general charge the court does give the jury that doctrine, but this request, coming afterwards, and being given without any· qualification at the time it was given, was well calculated to mislead the jury, and may have done so.

I am the more satisfied to concur with my colleague in the grant of a new trial in this casè, because I believe, from our consultations upon it, that my late much-lamented colleague, Judge Crawford, was very decided in the opinion that it ought to be granted; and had he lived, he might possibly have gone to the full extent of denying any recovery, to which Judge Hall has gone in the opinion just delivered.

2. To that extent I cannot go.   Where a parcel of youths and children are in the habit of passing to and from school on a path within the right of way of a railroad company, and have been for years in that habit within the limits of a village, in the knowledge of the railroad authorities, I cannot hold them to be trespassers to the extent and in the sense that the railroad company are only liable for gross negligence if any of them be killed or injured.   On the contrary, I hold that the company is bound to use all ordinary and reasonable care and diligence to avoid injury to them, and neglect to use such reasonable and ordinary care and diligence would make the company liable.   The rule in respect to passengers, diligence toward them, is extraordinary care and diligence.   It is that which a common carrier, which the company becomes, must use. Code, §§2066, 2067, 2083.

The rule in the case of persons not passengers is that which I have given above, "all ordinary and reasonable care and diligence, the presumption in all cases being against the company." Code, 3033.

And this rule has been applied by this court to a person not at all rightfully on the railroad track, but wrong-

v 70–17

fully there, sixty yards from a crossing, without any consent of the company, express or implied.   37 *Ga.*, 593.

In that case, gross negligence was expressly denied to be that neglect which would make the company liable, but it was held by the unanimous court that the measure of the liability is " all ordinary and reasonable care and diligence, not gross negligence as was insisted by counsel for defendant in error," in that case.  But if gross negligence be the rule in the case at bar, it is for the jury to say whether the neglect to ring, to slacken speed, and having the scantling projected out as it was, be not gross negligence.

Such is the law of this state, plainly written and printed in her statute book and ruled and applied by her highest court.

The question of negligence is for the jury.   34 *Ga.*, 330, and following cases *passim*.   The *quantum* of diligence required of the railroad company by the law being given by the court, it is for the jury to say whether or not facts proved make that *quantum*, subject of course to a review by the court to see whether the jury had enough testimony in to support the verdict.   As the case goes back, I dislike to argue the facts or pass upon them at all.   The views submitted by my associate make it necessary that I say that, if the railroad train swept through that village without ringing its bell or slacking its speed, with a scantling projecting unusually from its car, beyond the track, though within the right of way of the company, and thereby a youth was hurt in its rapid transit, the company is liable, unless by the use of ordinary care he could have avoided the consequences to himself of such transit, or the injury was caused by his own negligence alone.   If both himself and the agents of the company were to blame, or were at fault, but neither the sole cause of the injury, and if he could not by ordinary care have avoided the consequences to himself, then the damages should be apportioned in proportion to the default of each.   Under our law, it is for the jury to pass upon all these questions of diligence and

negligence and ordinary care in avoiding the consequences of such negligence or want of diligence when the emergency is upon the party complaining. The age of the plaintiff, his youth, should be considered on the one hand, and previous warnings, if any were given, on the other, and in the light of these and all other facts and circumstances proved, the jury should make their verdict.

Such, I think, is the law of Georgia applicable to the facts of this record; and I do not propose to examine the law of England or of other states on the issues made. The statutes of this state and the judgments of this court thereon construing them bind me.

3. The main question, I think, is ruled in the case of *Baston vs. The Central Railroad Company*, 60 *Ga.*, 339. The only possible distinction between that case and this is that there the declaration alleged that the plaintiff was upon the railroad track by its consent, and here no express consent is proved. But in the Baston case the declaration does not aver express consent, and inasmuch as all pleading is construed against the pleader, it is clear that the mind of the court was not upon the character of the consent, whether express or implied, but upon assent to the man's being on the road, by agents of the company; for otherwise the omission to aver that the consent was express, and to set it out as such, would have been fatal to the declaration, and the demurrer would have been sustained. Besides, the judgment there is not put on the consent of the company as essential to the ruling; but in the opinion it is said in conclusion, not that the right of plaintiff turned on the consent of the company that he should be on its road, but the language is: "Especially must this be his right, when he was on the track by the consent of the defendant," as much as to say, he had a right to go to the jury on the allegations any way, but the consent of the defendant rendered the right indubitable. True, consent is emphasized, because it put the point stronger and more irresistible; but without it, the declaration would have been held good.

Be that as it may, I hold in this case, as I did in that, that the plaintiff, under the facts, is not a mere trespasser, but is entitled to more consideration than a trespasser, that is, to all ordinary and reasonable care and diligence. It will be seen from that case that I wrote that a naked trespasser would be protected from gross negligence. The case cited from the 37th *Ga.*, 593, where the point came squarely up, would seem to put even a naked trespasser upon the higher ground of ordinary diligence, that is to say, the liability which attaches to ordinary neglect. Code, §2061. Gross neglect is quite a different thing. Code, §2063. The one is the absence of the care of an inattentive man; the other of a prudent man.

I think that the unanimous decision in the 37th is the law rather than my *obiter* in the 60th. Code, §217. See also *The Central Railroad vs. Glass, adm'x.*, 60 *Ga.*, 441, where a recovery was had because the conductor and engineer were not sufficiently diligent in looking out for Glass, who was lying drunk on the road a mile from the place where he was put off. There the court say: "Leaving out of view altogether the conduct of the conductor and brakeman (of the down train) in putting Glass off at the place and time they did so, the law presumes that the up train which did the damage was negligent, and there is, in our judgment, no sufficient proof of diligence on the part of the officers of that train to rebut the presumption." So that Glass, a naked trespasser, recovered on the ground, not of gross negligence, but ordinary negligence.

This case at bar was here before. It is reported in 64 *Ga.*, p. 475. The case was then sent back upon the law substantially as indicated above, and no intimation was made by the court that there could be possibly no recovery. On the contrary, on errors of law it was then remanded; on an error of law I now concur in again remanding it. The line of my brother's argument leads inevitably to the conclusion that, under the facts, there can

Central Railroad *vs.* Brinson, by next friend.

be no recovery. It would have been the duty of this court to have so declared then, had it so thought; because it would have been a waste of time and of costs to have tried before a jury an issue which this court would not permit to stand if determined by that jury in a certain way. Having not so held, in common with my brethren then, I cannot so hold now; but I concur in the judgment that the case be tried again, because I think the court erred in giving, without qualification, the charge requested, content to abide the verdict of the jury on the issues of fact which may be again made before them.

I add that the court below may have charged the request because it was the language of this court in some case here; but what this court lays down as law is to be construed in the light of the facts of each case, and it will be found unsafe for counsel to copy from the reports an abstract principle of law, and request it to be charged, and for the court to charge as so requested. Besides, sometimes unguarded expressions of the individual member of this court writing the opinion may mislead, because those expressions needed qualification.

From the above it will be seen that the opinion of my brother, as a whole, is his own, and not that of the court; because but two of the court sat in final judgment of the case, and I cannot assent to many views of the law which he has expressed as applicable to and ruling and controlling the case at bar. This I say in entire respect for the learning and integrity which distinguish him as a lawyer and a judge.