# CHARLESTON.

McVey v. Chesapeake & Ohio Ry. Co.

46 111
60 316

Submitted January 16, 1899—Decided March 25, 1899.

1. RAILROADS—*Speed of Train—Expert Testimony.*

   The speed of a passing train is not a question of science, but of observation, and any one possessing knowledge of time and distance is competent to testify in relation thereto.   (p. 113).

2. RAILROADS— *Instructions—Highway—Error—Negligence.*

   When a railway company has an exclusive right of way running parallel with, and adjoining to a public street through a populous town, although the tracks be used by the public habitually as a footway, it is error to instruct the jury that, in running its trains and cars over such right of way through such town, it is the duty of such company to use the same degree of care to avoid injury to persons using such right of way as a footway as it would be required to use if the tracks ran lengthwise through said town upon a public street or highway. (p. 115).

3. RAILROADS—*Trespassers—Degree of Care.*

   The fact that the tracks upon the company's right of way are so used by the public in such town imposes upon the company the obligation to use greater care and prudence in running and managing its trains at such a place than would be required at places where the tracks are not so used.   (p. 115).

4. RAILROADS—*Trespassers—Ordinary Care.*

   The defendant, in operating its road on tracks so used by the public, should use ordinary care and diligence; and what constitutes ordinary care and diligence depends upon circumstances. It must be commensurate with the dangers incident to the handling of its cars and trains at that particular place.   (p. 115).

5. RAILROADS—*Evidence—Contributory Negligence.*

   In an action for damages for the death of a person killed by a train of a railroad company, the fact that no proof is offered to show that the decedent, in going on the track, stopped and looked for an approaching train, does not raise the presumption that he did not stop and look unless the evidence shows that he must have seen the approaching train if he had looked.   (p. 121).

Error to Circuit Court, Kanawha County.

Action by George W. McVey, Jr., administrator, against the Chesapeake & Ohio Railway Company. There was a judgment for plaintiff and defendant brings error.

*Reversed.*

Simms & Enslow, for plaintiff in error.

O. W. Aldrich and Watts & Ashby, for defendant in error.

McWhorter, Judge:

George W. McVey, Jr., as administrator of the estate of William H. Robinson, brought his action against the Chesapeake & Ohio Railway Company, in the circuit court of Kanawha County, to recover damages for the death of his intestate, who was killed by the defendant's cars, at Montgomery, on the night of the 10th day of December, 1896. The case was tried before a jury, and a verdict rendered in favor of the plaintiff for two thousand five hundred dollars damages. The defendant moved the court to set aside the verdict and grant it a new trial, which motion was overruled by the court, to which ruling of the court the defendant excepted, and the court rendered judgment upon said verdict. Defendant applied for and obtained from this Court a writ of error to said judgment, its petition setting forth eight assignments of error.

The first assignment is that the court admitted improper testimony of the witness Huffine as to the speed the train was moving, as it was a material fact as to the speed the train was moving, at the time Robinson was hit because the evidence was elicited to show that the speed of trains was reduced within the town limits to six miles per hour by the town of Montgomery, and the court allowed Huffine to testify as to his opinion as to the speed the train was moving, and it was not shown he had ever had any experience in handling trains; and it is claimed that Huffine, not being an expert, should not have been permitted to express an opinion as to the speed of the train. In *Railroad Co.* v. *Van Steinburg*, 17 Mich. 99, it is held that: "Testimony concerning the speed of a passing train of cars may be given by any one possessing a knowledge of time and

distance. It is not a question of science, but of observation." This witness had been in business at Montgomery ten years, had worked some five months on a gravel train prior to that time, and was familiar with the movements of trains. It would seem that any man of ordinary intelligence, living for years along the line of a trunk railway, would be competent to form a fair judgment of the speed of a passing train; and especially should this witness Huffine, be able to express a pretty correct opinion of a train moving at a rate not exceeding ten or twelve miles per hour, as the gravel trains, with which he had several months' experience, moved in a similar manner.

The second assignment is that "the court erred in allowing evidence of a signboard which had been put up by the mayor of the city, without showing that it was by authority of an ordinance." On motion of defendant to exclude all evidence in regard to the putting up of signboards, because of the failure to prove the ordinance of the town of Montgomery, the court struck out all evidence in regard to the authority by which the signboards were placed there, but refused to strike out the evidence of the fact of the existence of the two signboards, to which ruling of the court the defendant excepted. I am unable to see how this evidence could prejudice the defendant. Under the evidence, the rate of speed at which the train was moving (and the lowest rate claimed by defendant was five miles per hour) is quite immaterial, as the principal question is whether the train was properly guarded and managed,—whether the front end of the car being pushed or backed was supplied with a light or a watchman to avoid and prevent accident.

The third assignment is that the court erred in giving on behalf of plaintiff instruction No. 1: "The jury are instructed that if the plaintiff has shown by a preponderance of the evidence that the right of way of the defendant through the town of Montgomery, in Fayette County, West Virginia, is adjoining and parallel to the principal street of said town, and with no fences or other objects to show to the public where the street line is, and has also shown by a preponderance of the evidence that the people of the town and surrounding country have continuously and gen-

erally used the ground covered by said right of way as a common and public footway to pass through the town and from one part of the town to another, from the year 1872 to the 10th day of December, 1896, such facts, if so proven, rendered it the duty of the defendant, in running its trains and cars over said right of way in said town, to use the same degree of care to avoid injury to persons using the right of way as a footway as it would be required to use if the tracks ran lengthwise through said town upon a public street or highway; and if the defendant has failed to use such degree of care, and by reason of such failure William H. Robinson was killed by a train of cars operated by defendant on the evening of the 10th day of December, 1896, then defendant is liable for the death of said Robinson, and the fact that at the time of his death said Robinson was using said right of way as a footway will not of itself defeat the action for his death." This instruction goes too far, in requiring the defendant, in running its trains and cars over its right of way in the town of Montgomery, to use the same degree of care to avoid injury to persons using such right of way as a footway as it would be required to use if the tracks ran lengthwise through said town upon a public street or highway, and on failure to use such high degree of care and by reason of such failure Robinson being killed, it should be liable for his death. However long may have been such use of the right of way by the people, and to what extent it may have been so used the fact remains that "the railroad company has the exclusive right of way, upon which no unauthorized person has a right to be," as stated by Judge Brannon in *Spicer* v. *Railway Co.*, 34 W. Va., at page 517, (12 S. E. 554). And in *Baltimore & O. R. Co.*. v. *State*, 62 Md. 479, it is said that: "Any one who travels upon such track as a footway, and not for any business with the railroad, is a wrongdoer and a trespasser; and the mere acquiesence of the company in such use does not give the right to use the track, or create any obligation for special protection." And in *Mulherrin* v. *Railroad Co.*, 81 Pa. St. 366: "The man who steps his foot upon the track does so at his peril. The company has not only a right of way, but it is exclusive, at all times and for all purposes." From the very nature of

the case, while the public may take the risk, and so use the right of way as a footway, they can never acquire any rights therein. All this being true, the fact that the tracks are so used by the public imposes upon the company the obligation to use greater care and prudence in running and managing its trains at such a place than would be required at places where the tracks were not so used. And on tracks so used the defendant, in operating its road, should use ordinary care and diligence; and what constitutes ordinary care and diligence depends upon circumstances. It must be commensurate with the dangers incident to the handling of its cars and trains at a particular given place. "The fact that pedestrians are accustomed to travel on a railroad at a particular place makes it the duty of such railroad company to exercise greater caution and prudence in the operation of its road at that place." *Nuzum* v. *Railway Co.*, 30 W. Va. 228, (4 S. E. 242); *Barrickman* v. *Oil Co.*, 45 W. Va. 634, (32 S. E. 327); *Brown* v. *Railroad Co.*, 50 Mo. 461. It is insisted that by the use of the right of way by the public as a footway for so great a length of time the public has acquired the right so to use it; and appellee cites in support of his position *Railway Co.* v. *Pointer*, 9 Kan. 620, 628, and quotes: "Plaintiff had a right to show that the place where he was injured was on a public street of Leavenworth; and, if he could not show that it was a public street in law, he still had a right to show it was a public street in fact. And for this purpose, if for no other, he had a right to show that public travel was on or over this ground, and to show that such travel was then with the knowledge and consent of the railroad company. If he should show that the place where the injury occurred was on a public street, either in law or in fact, he would not be such a trespasser as would relieve the railroad company from exercising reasonable and ordinary care and diligence towards him. In fact, he would not be a trespasser at all. The railroad company, in such a case, would be bound to run its trains with reference to him, and to every other person who might be rightfully occupying the street." In that case both the public and

the defendant had the right to use the street. The same opinion says: "In fact, in this case the legal right of the railway company and that of the public to use this ground as a street seem to be about equal. Both derive their right from a city ordinance. If it should be shown on a retrial of this case that the plaintiff had no right to be on the ground when the injury was received, the law of the case with respect to care and diligence would be very different from what we have stated it. The railway company would not then be bound to run their trains with reference to persons who might be on the track. The fact that people have often trespassed upon the track, and the company have not stopped them, does not imply consent to use the track and will not create any right in the public to use it." *Spicer* v. *Railway Co.*, *supra.* "When a railroad company by authority of law goes into possession of land for the objects of its creation, is not that an appropriation to certain great, specified public uses? And can it divert its use to purposes wholly inconsistent with those which it is authorized to pursue,—purposes which may imperil the lives and property of travelers on its trains,—without incurring a forfeiture of its privileges? To ask, it seems to us, is to answer, these questions." *Railroad Co.* v. *Brinson*, 70 Ga. 207, 241.

The evidence in the case at bar shows that deceased, with three or four other persons, left the church after nine o'clock p. m., and went onto the east-bound track, and started west, and saw a train leave the depot going east, on the same track; that they stepped off of the track, and onto the west-bound track. Mary Hall, one of the party, says that, when they got on the west-bound track, "We looked back to see if there was a train coming, and we didn't see any;" that, when they had walked about forty feet, Charlie Dandridge looked back and said, "There comes a train," and they looked back and got off the track; that Robinson and Miss Rogers were a little behind them, and they did not see Miss Rogers until they got off the track. She was asked: "When you looked back and got off the track, what did you see, in the way of a light, or a man, or anything there? A. Didn't see anything,—only the box car

coming down.   We looked back and the box car was  right on us when we  looked back, and we just had  time to step off the track.   Didn't see any light on the box car.   Could have seen it  if there had been one.   The train  was going pretty  fast.   It gave no sound or signal.."   Witness Lillie Dolin, another one of the party, testifies to the same effect. That they looked  back for a train.    "Didn't  see any. Then  Charlie Dandridge  looked  back, and told  us  there was a train coming on that track;" and the train was right upon them, coming  rear end.   "Saw nothing but  box car. Saw no man or light on it."   That Charlie Dandridge threw them off the track, and they stood there till the train passed by.   Did not  see Robinson when  she got off the track, but saw Miss Rogers.   She was a little way behind. She got  off on  the same  side of the  track as witness did. She says, "The train was  running pretty  tolerable fast." Miss Rogers (witness) was walking with Robinson.   When the  east-bound  train was  passing  them, and  they on  the west-bound  track,  the  locomotive whistled,  and  witness says, "This train scares me," and  stepped  right  in  front of him.    He let  go  her arm,  and  she stepped off the track, and  he walked a little  behind her; and, just as wit-ness was  about to step back on the track, Miss Dolin, who was in front of  her, "threw up her arms to throw  herself off  the track.   I was aiming  to step up  on the track,  and turned my head  to  see what was the matter, and  I threw myself back to keep the cars from striking me."   The end of the  box car was right  at me, and I just fell back out of the way.   The rear end was  backing  down."   She  says, "There  was no  light and  there was  no man on  the  car," and  says, "I  don't  know exactly  how  fast  the  train was moving, but  it  was moving  pretty  fast."   R.  C.  Taylor, witness  for  the  defendant, was  brakeman  on  the  train. Says  he was on  the  head car, backing  down.   Was on  the head  car until it  got about  the  cross-over  switch,  and  I went back to set a brake on the rear end, and was fixing to stop there,  so as  to  cross in  on  the other  track to get Straughan's loads.   I went to the rear end of the car to set a brake on."   And witness says Robinson was found right at the cross-over  switch on  the west-bound track; that he (witness) went back to the rear end of  the car just before

they got by there. "Q. Do you know when Robinson was hit? A. He was hit forninst the cross-over switch on the east-bound track. Q. How long is that switch? A. It is about 75 or 80 feet, I guess. Q. Who showed you where he was hit? A. Curry Vickers was the first one that showed me, and then I could see myself. Q. What sign did you see? A. Where we dragged him. Q. Did you go back on the rear end above or below the point? A. Just about that point when I left the front end of the car. Q. State whether there was any light on that car. A. None except my lantern. I had my lantern with me. Q. What did you do with it? A. I set it down on the running board." Says his lantern was a common white railroad lantern. Says train was going at rate of about four miles an hour. On cross-examination, says he does not know whether he was on the front end of the car when Robinson was struck, or not, and thinks he had not more than got back to the east end of the car when he was struck; that, when he set his lantern down on the running board, it was at the east end of the car, and it could give no light in front of the west end. And he states that he remained with his light at the east end of the car until he left the train, near the depot. Curry Vickers, another brakeman on the train, next to the engine, says the train was running, he thought, about between four and six miles an hour at the time Robinson was killed. The engineer, J. E. Gwinn, says they were running not over four or five miles an hour. D. G. Perry, fireman, says he supposes they were running about four or five miles per hour.

Instruction No. 2 given for plaintiff is as follows: "The jury are instructed that if a railroad company should, about the hour of nine o'clock in the evening on or about the 10th day of December, back a train of 23 loaded cars at a speed of from five to ten miles per hour over its tracks running lengthwise over the public streets of a town, when the people are generally and continuously in the habit of using the right of way in such street as a public footway, and should back said train without keeping a lookout on the head end of the forward car of the train so being backed, and without keeping a light on the head end of such front car, such omission to keep either a light or a

watchman would be gross negligence upon the part of such company, and render said company liable for the death of any person who is killed by reason of such omission." This instruction is subject to the criticism of counsel for appellant, in that it refers to defendant backing "a train of twenty-three loaded cars at a speed of from five to ten miles per hour over its tracks running lengthwise over the public streets of a town," and also because it makes the defendant liable without considering whatever the contributory negligence of the decedent, Robinson. Defendant's tracks do not, as appears from the record, run lengthwise over the public streets of Montgomery. While it is true it appears from the evidence that there is no fence or mark to separate the defendant's right of way from the streets, and that the same runs parallel with and adjoining the street, yet it has an exclusive right of way, which is occupied by its tracks, which tracks are sufficient notice to the public that the street does not occupy the same ground. An instruction which leads the jury to understand that the public have equal rights with the defendant is misleading. Appellee insists that the several instructions were prepared as paragraphs of a charge to be considered together, and the second, third, and fourth are to be considered as explanatory of the first; that being the case, the reference to the consideration of contributory negligence in the third and fourth would apply as well to the first and second. This is not the case, when instructions are drawn, as these are, separate, independent, and distinct from each other, so that one or more may be given and others rejected without in any way affecting the force of those given; and, so, being independent, they should be complete in themselves severally, to prevent confusing or misleading the jury. *McCreery's Adm'x* v. *Railroad Co.*, 43 W.Va. 116, (27 S. E. 327); *Webb* v. *Packet Co.*, 43 W. Va. 800, (29 S.. E. 519); *Fisher* v. *Railroad Co.*, 39 W. Va. 371, (19 S. E. 578). Speaking only for myself, as a majority of the Court does not agree with me in the proposition, I claim that the backing of a train of twenty-three cars over tracks running through a populous town or village, in the nighttime, where the people habitually use the right of way as a public footway, and so backing such

train without keeping a lookout on the head end of the forward car of the train being so backed, and without keeping a light on the head end of such front car, such omission to keep either a light or watchman would be gross negligence upon the part of the railroad company; and in this I am supported by the Court in *Nuzum* v. *Railroad Co.*, *supra*, (Syl., points 5, 6.)

Plaintiff's instructions Nos. 3 and 4 are: (3) The jury are instructed that they are entitled to consider all the facts and circumstances proven, for the purpose of determining whether defendant was guilty of negligence. If they believe that William H. Robinson was killed by a train operated by defendant on the 10th day of December, 1896, at Montgomery, West Virginia, and if they should find that defendant was guilty of gross negligence, under the circumstances, they should find for the plaintiff, unless said Robinson himself was guilty of negligenec which directly contributed to his death. (4) The jury are instructed that if they are satisfied by the evidence that defendant's train killed William H. Robinson on the night of December 10, 1896, at Montgomery, West Virginia, and that such train was not, under the circumstances shown in evidence, run with reasonable care to prevent accidents, this will render defendant liable for his death, unless it is shown either by the evidence of plaintiff that said Robinson was himself guilty of negligence which was in part the cause of his death, or defendant has shown such negligence by a preponderance of the testimony,"—were properly given, although appellant contends that No. 4 is bad "because it makes the defendant liable for running its trains without reasonable care to prevent accident as to trespassers, and does not limit it to reasonable care after the discovery of the danger of the decedent, who was on the track as a trespasser." Under the circumstances of this case, as shown by the evidence and the authorities hereinbefore cited, No. 4 is a proper instruction.

Plaintiff's instruction No. 5: "The jury are instructed that there is no presumption that a deceased person, killed by a train of cars, did not stop and look towards the train; and failure on part of the plaintiff to offer proof that he did look does not create such presumption, unless the evi-

dence shows that he must have seen the approaching train if he had looked in its direction,"—appellant's counsel claim, is wrong, because it instructs the jury that "a person who goes upon the track, where he has no right to be, is presumed to have stopped and looked. This presumption is only applicable to persons at a railroad crossing where they have a right to be. Unless it is shown that they did not stop look and listen the court will presume they did." The instruction will not bear that construction. There was no evidence offered to show that decedent did stop and look for a coming train when he got upon the westbound track, and the instruction is that failure to offer proof to that effect does not raise the presumption that he did not stop and look, unless the evidence shows that he must have seen the approaching train if he had looked. Two of the persons who were in company with decedent (May Hall and Lillie Dolin) testify that when they got onto the westbound track they looked back for a train, and saw none. It cannot be presumed that decedent did not stop and look. For the reasons herein given, the judgment will be reversed, the verdict set aside, and a new trial awarded.

*Reversed.*