## L. & N. R. R. Co. v. Long's Admr.

Appeal from Kenton Circuit Court
(Criminal Branch, Common Law and Equity Division).

DISSENTING OPINION BY JUDGE NUNN.

In my opinion, the criticism made in the opinion of appellee's petition and amended petitions of the different means by which Long might have lost his life, is hard-

ly fair. It was impossible for his administrator to know the particulars of his death, as he was killed about the hour of midnight, when, it seems, no persons, except the employes of the railroad, were present, and, it is probable, they did not enlighten the administrator upon the subject. I do not wish to cast any imputation upon the credibility of these persons, but it is well understood by courts and law writers that the relation of witnesses to a party in an action, by either blood, friendship or employment, may be shown for the purpose of lessening the weight of their testimony. It was alleged in the petition that Long was killed by the gross negligence of the conductor and engineer in charge of the train; that this negligence consisted in placing Long at work in the discharge of his duties and then, without warning of any kind to him, and against the rules of the company, starting the train which ran over his body, killing him instantly. These facts were shown by the testimony with but little, if any, contradiction, and are virtually admitted in the opinion.

It was proved in this case, without contradiction, that it was the duty of the conductor and brakemen (Long was a brakeman) when the train stopped, as it did in the case at bar, to go out and examine the couplings, wheels, journals, brakes, air hose and rigging; that in making these examinations and repairing the couplings, air hose, rigging, etc., the person doing so would, at times, have to place his body under or partly under and sometimes between the cars. It is shown by the record, and so stated in the opinion, that the freight train upon which Long was working as rear brakeman and flagman, went upon the siding at Cynthiana to let a southbound freight train pass. The siding onto which the train that killed Long went, was east of the main track on which the southbound freight train passed, and as Long was at work on the west side of his train, he was of necessity, between the two and occupying a position nearest the sides upon which the firemen worked upon the respective trains. It is proper to remark at this point, that the fireman upon the train that killed Long, although shown to have been at his post of duty the night of the accident, was not introduced as a witness, nor was his absence accounted for. As stated in the opinion, the conductor and Long left the caboose when the train stopped, to perform their duties with reference to looking after the condition of their train.

They walked together for six car lengths, going north on the west side of their train, at which place they found a hot box, and Long, with his bucket and packing iron, was left by the conductor to fix it. The conductor passed on north until he reached a point six car lengths from where he left Long at work, but before he reached that point the engineer started the train and moved it about two and a half or three car lengths, when it was suddenly stopped. The conductor then went from the west side of the train to the east, passing over the draw heads between the cars, and started back. About one or two car lengths before he got opposite the place where he left Long, he crossed the train, in the same way as before, to the west side where he continued to move south to where he found Long under the third car from the caboose, dead. Long was about middle way of the car and his chest showed that it had been run over by the wheels of the car. As stated, there was only one movement of the train, and that movement killed Long, which movement it is conclusively shown by the evidence and admitted in the opinion, was negligently and wrongfully made by the engineer. The parties and the opinion agree that the engineer should not have, under the circumstances, moved the train until he received a signal that all was ready for him to start the train. The conductor and head brakeman testified that they gave no signal for the train to be moved, and the rules of the company say that he should not have started the train until he received a signal from the conductor. According to this rule, and the conductor's and head brakeman's testimony, if they told the truth, the engineer moved the train wrongfully and negligently, by reason of which, Long was killed. This is as certain as day follows night. So, we have positive proof that Long lost his life by reason of the negligence and wrongful act of the engineer. But it is said that although that negligent movement of the train killed him, it is not shown that he did not commit some negligent act himself which contributed to his death; and upon this idea the opinion holds that a peremptory instruction should have been given, that is, as the engineer testified that the head brakeman gave him a signal to start the train and he did so; that some one from the rear stopped the train by putting on the air brakes, which must, of necessity, have been Long, who,

in order to do this, must have gone between the cars at the point where the Sullivan valve was located, three cars from the caboose, to pull the string to work the valve, and he, therefore, committed a negligent act which contributed to his death, and but for which his death would not have occurred. This is the idea upon which the opinion is founded and is an erroneous conception of the law governing such cases. This court has decided in several cases that when the proof shows that a person was killed by the negligent or wrongful act of another, to avoid responsibility the person committing the negligent or wrongful act must plead and prove contributory negligence on the part of the person killed which caused or contributed to his death.

In the case of Lexington & Carter County Mining Co. v. Stephens' Admr, 104 Ky. 502, the mining company contended for the same principle that the opinion in the case at bar is based on to-wit: That there was no proof introduced conducing to show that Stephens was not aware of the danger, or that he could not have ascertained the danger by the use of ordinary care and diligence, and that therefore the verdict was unauthorized. To sustain that proposition the case of Bogenschutz v. Smith, 84 Ky., 342, was cited. In the case at bar the engineer testified that some person back of the engine put the air brakes on and stopped the train suddenly, therefore the inference is that Long pulled the string attached to the Sullivan valve between the third and fourth cars from the caboose, which caused the air brakes to go on, and to do this, Long must have gone between the cars of the train while it was in motion and for this reason a peremptory instruction should have been given to the jury to find for appellant. In the case of Lexington & Carter County Mining Co. v. Stephens, supra, the court said:

"It may be said that in all cases where a servant is suing an employer to recover for injuries sustained by reason of the negligence of the employer, it is incumbent upon the plaintiff to aver and show that he was not aware of the danger, and that he could not with ordinary diligence have known of the danger or risk that he was incurring in time to have prevented the injury. But it must also be remembered that a recovery in such cases is authorized by the common law, and that at common law no recovery can be had for injuries resulting in the immediate death of the person injured. The right to re-

cover in case of death is authorized by the Constitution and statutes enacted by the Legislature, which give an absolute right to recover where death ensues from the negligence or wrongful act of the defendant; and it will be observed that the statute makes no reference to the knowledge or contributory negligence of the decedent; and, while it may be true that the administrator or heir would not be allowed to recover in a case where the decedent had knowledge of the danger or risk he was about to incur, yet such negligence is a matter of defense, and, to be made available, must be pleaded and proved by the defendant. Any other construction of the law would, in effect, make it a dead letter, for the reason that, the injured party being dead, it would be impossible to prove that he was not aware of the danger, or that he could not with reasonable diligence have ascertained the danger.''

The opinion in this case has been consistently followed ever since it was rendered by this court. (See the case of C. N. O. & T. P. Ry. Co. v. Yocum, decided December 10, 1909.)

The point I wish to impress upon the mind is that in actions under section 241, Constitution, and section 6, Kentucky Statutes, all that is required of the plaintiff is to show that his intestate's death resulted from the negligent or wrongful act of the defendant; and if the decedent committed any act of negligence which contributed to his death and but for which his death would not have resulted, it is the duty of the defendant to allege and prove such negligence on his part. Appellant in the case at bar did charge in its answer that the death of Long resulted from his contributory negligence, but for which he would not have lost his life; admitting, in effect, its negligence but claiming that but for the decedent's negligence he would not have been killed.

I will now take up the testimony and consider whether it shows any negligence on the part of Long. It is true that there is an inference from the testimony showing that Long's death might have occurred in the way determined in the opinion. No one who testified stated that they saw Long go between or under the cars; there is a total absence of proof upon this point, and the courts and juries should no more be allowed to guess away the rights of a plaintiff than to guess away the right of a railroad company, as in the Wintuska, Hughes and other cases cited in the opinion. The proof makes it clear that

Long lost his life by reason of the wrongful and negligent act of the engineer in moving the train without warning or authority to do so. We do not have to guess that this wrongful and negligent act of the engineer resulted in the death of Long, but as to whether Long committed any act of negligence which contributed to his death, there is a total failure of testimony; conceding that in such cases the courts and juries are allowed to draw conclusions from the testimony and guess away the rights of a plaintiff. I will now proceed to show from the testimony that it was impossible for Long to have gone between the cars while they were in motion, and pull the string attached to the Sullivan valve which put the air brakes on, as the engineer said was done. The conductor, Tingle, testified that the Sullivan air valve was "located in the hose coupling between the third and fourth cars ahead of the caboose," and all the witnesses agree that this was right. The conductor further testified, without contradiction, as follows:

"Q. What is the effect on a train of the application of the Sullivan valve, as to the distance which it will move after the valve has been pulled, or, I will modify that—on such a train as you had on this particular night?"

"A. Well, it would depend, of course, on the speed of the train. This train moved very slow, and it would stop it right at once."

"How far would you say it would move upon the application?"

"Well, not over two or three feet, I shouldn't think."

The conductor further testified as follows:

"Q. When you found his remains, where were they?"

"A. They were lying underneath the car, between the truck, between the rails."

"Q. What kind of a car?"

"A. Coal car."

"Q. A box car?"

"A. No. sir; a gondola."

"Q. Which truck of the gondola car were they nearest?

"A. Well, they were about middle of the car."

Further on in his testimony he said that the car under which the remains were found, was the third car from the caboose; that the Sullivan valve was situated between the third and fourth cars from the caboose, and that the cars were thirty-six or thirty-eight feet long. Shirley Frisbie, a witness for appellant, after testify-

ing that one wheel of the front trucks had passed over his body and that the others were partially on it; continued as follows:

"Q. Did you observe what car it was?"

"A. Well, it was the fourth car, I believe, from the caboose. It was the front trucks of the fourth car, if I remember, it was a box car; the wheel run right up over him here (indicating), and run off on this side (indicating left chest in a slanting direction)."

Louis Watson, the head brakeman and the only other witness who testified, as to where Long's body was found, said:

"Q. I believe you said the train had moved about a half car length when it was stopped?"

"A. You mean when we killed him?"

"Q. Yes, sir?"

"A. As far as my recollection, it had, if he got killed on the same car he was packing the hot box on. I think the same car where he was packing the hot box was the same car he got killed on; I didn't notice the hot box on the car though."

The proof shows that there was no other movement of the train after the wrongful and negligent one made by the engineer, which killed Long, until after the time referred to by these witnesses. We have the conductor, without contradiction, testifying that the train was stopped at once, or within two or three feet after the application of the air brakes, presumed to have been made by Long. The conductor placed Long's body about midway of the car which was thirty-six or thirty-eight feet long, therefore his body was eighteen or nineteen feet, according to the conductor, from the point where the Sullivan valve was. The undertaker, Mr. Frisbie, shows that the body of Long was found under the fourth car from the caboose and near the front end thereof, about thirty-six feet away from and in front of the Sullivan valve. Therefore, if this testimony be true, it was impossible for Long to have put the air brakes on as alleged. The conductor further testified:

"Q. From what points on that train was it possible to apply the air, so as to stop the train?"

"A. Well, from the engine or from the caboose, or from this Sullivan valve that was in the train."

"Q. Tell the jury where the Sullivan valve was?"

"A. It was located in hose coupling, between the third and fourth car ahead of the caboose."

As stated, the engineer says that some one from behind put the air brakes on, but there was not a witness in the case who stated any fact or circumstance from which it might have been inferred whether the air brakes were put on or not from the caboose. It is more reasonable to presume that they were put on from the caboose than that Long put them on, for we have shown from the position of his body when found that it was impossible for him to have applied the air at the Sullivan valve, either that, or the engineer applied the air from the engine, but in endeavoring to excuse himself in his wrongful act in moving the train, placed the negligent act upon Long by which he lost his life. With these facts before us, it is inconceivable to me why this court ordered a reversal of the case and directed a peremptory instruction in behalf of appellant. As stated, no witness testified that saw Long between the cars. (But there was one witness, the fireman, who was in a position to see and tell the truth about how Long met his death, but he was not introduced, nor his absence accounted for.) There was only one witness, the engineer, who made a statement from which you might guess that Long went between the cars and pulled the Sullivan valve while the train was in motion; and that statement was, "the air was put on from behind me." The well-established rule of this court is that where a witness who stands fair, tells a reasonable story, who is disinterested and who is not contradicted upon any material point in the case, testifies to an act on the part of the plaintiff or decedent, showing negligence which contributed to his injury or death, a peremptory instruction in such cases is proper, but when the witness does not so stand, the question is one for the jury. In such cases neither the court nor jury is bound to give full credit to the testimony of the witness. The engineer in this case gave testimony to the effect that air brakes were put on behind him, and it is used as a basis for a peremptory instruction, although the engineer stood flatly contradicted with reference to the signal being given to start, by the head brakeman, and besides he was interested in putting the blame upon Long rather than leaving it upon himself; he was also contradicted in other statements made by him by the facts and circumstances proved in the case, and for these reasons the question should have been submitted to the jury for their determination. And it was

with this in view that the court gave the instruction asked by appellant, to-wit:

"If the jury shall believe from the evidence, that the decedent, Edward Long, went between or under the cars in the train by which he was killed, for any purpose after said train had started, and that he was run over and killed as a result of so doing, the jury should find for the defendant."

As stated, it is agreed by all that it was the duty of Long, under the circumstances shown in the record, to investigate the rigging under the cars and the draw heads and air hose between the cars, and if he found anything which he conceived to be defective, to repair same, and in doing this he must have, of necessity, gone under or partly under or between the cars. The fact is inevitable, · that when the engineer negligently and wrongfully moved this train, Long must have been between or under or partly under some car, otherwise the wheels would not have passed over his chest, arms and legs. If presumptions and inferences are allowable in a case like this one, which would be the most reasonable, that he went under or between the cars in the performance of his duties, or negligently went between the cars when they were moving? This court has passed upon this question and established what I conceive to be a reasonable and humane rule. In the case of I. C. R. R. Co. v. Cane's Admx, 28 Ky. Law Rep. 1018, this court said:

"The evidence shows, without contradiction, that, after the engine stopped in obedience to the signal of the brakeman, it was his duty to remain standing until he received a signal to move. With this duty of the engineer, the brakeman, who was to give the moving signal, was well acquainted, and it seems to us he had a right to expect that it would be faithfully discharged, and was warranted in governing his own action upon its performance. The record does not show what duty called the brakeman in between the cars, nor are we informed exactly what he was doing, or where he was standing at the time the great danger with which he was about to be overwhelmed became apparent to him; but we perceive no reason why we should presume that he was unnecessarily between the cars, or that he did not find something to be done which he considered it his duty to do. Having a right to rely upon the fidelity of the engineer, he could act with less caution than would otherwise be incumbent upon him. If, as the testimony

of Vincent and Mrs. Hall tend to establish, he was adjusting the knuckles of the automatic coupler on the first empty, in order to make it easier to couple it when it was desired to put it again in operation, he would have to do this with his hands, as is shown by the uncontradicted testimony in the case. If he considered this to be his duty, we are not willing to say that it was per se negligence for him to go in front of the drawhead to perform it; and if, while he was so occupied, the engine and loaded cars were backed up against him, as is the theory of appellee, then it seems to us the latter's case was made out.''

However, to avoid the effect of this humane rule, the opinion in the case at bar states that there were two eye witnesses to the killing in the case just cited who stated that they saw the brakeman between the cars, as they thought, trying to adjust the knuckles on the coupling, and that it was therefore not necessary for the court to establish the rule it did upon the point suggested. It must not be overlooked, however, that the railroad company in that case showed that the two eye witnesses referred to were not in a position to see the brakeman, and to sustain the appellee in that case it became necessary for the court to say what it did. See also the case L. & N. R. R. Co. v. Bell, 114 S. W., 328, where it is said:

''It is earnestly insisted for the defendant that the court erred in overruling its motion for a peremptory instruction, and that the case falls within the principle that, where the evidence is as consistent with the conclusion that there was no negligence on the part of the defendant as with the conclusion that there was negligence on its part, there can be no recovery. But this rule does not apply where there is evidence that there was negligence on the part of the defendant. If the testimony for the plaintiff is true, we cannot say that there was no evidence that Bell lost his life while between the cars coupling the air hose by reason of the fact that the engineer backed the train on the signal of the conductor while he was thus engaged without waiting for a signal from him; and, if this be true, there was sufficient evidence of negligence on the part of the defendant to justify a verdict for the plaintiff. It is manifest from all the evidence that after putting some cars on the side track Bell returned with the engine and remaining cars to the main track, and undertook to couple these cars

to the hinder part of the train which he had left standing on the main track. If the evidence for the defendant is true, he made this coupling, and, after he had finished it, signaled the engineer to come back, and the engineer, finding the slack against him, had to go forward a little to take up the slack, and, when he did this, the train parted. He then came back, not knowing that the train had parted, and Bell, without a signal to the engineer, had gone in between the two parts of the train, and was thus mashed. There was evidence tending to show that Bell's death might have occurred in this way, but whether it occurred in this way, or in the way first supposed, was a question for the jury," etc.

From this authority, it is clear that when the testimony fails to show positively what a brakeman was doing at the time he received the injury, but does show facts from which it might be reasonably inferred that he was doing one of several things, some of which were in the line of his duty, and in the performance of which he was entitled to protection by his conductor and engineer, and another was an act of negligence on his part, the presumption is that he was performing his duty to his employer at the time, rather than that he was committing an act of contributory negligence. It is conceded in the opinion that it was the duty of Long to examine the brakes, rigging and other apparatus on the cars and that the engineer negligently and without warning started the train forward; and continues as follows:

"Here, then, we have negligence proven, and injury resulting in death. This, however, is not sufficient. In a long line of opinions this court has recognized the rule that it is necessary for the plaintiff to prove negligence naturally resulting in the injury. Unless the proof connects the proven injury as a rational and proximate result of the proven negligence, there is nothing to submit to the jury. The absence of evidence upon any material point is as fatal to him who has the onus, as the absence of all evidence would be."

And then refers to the following cases, which I will consider. The first one is C., N. O. & T. P. Ry. Co. v. Zachary's Admr, 32 Ky. Law Rep., 678. In that case Zachary was the conductor of the train, and while the brakemen were engaged in some other duties, he undertook to set some freight cars upon a siding. He went with the engine and cars from the siding back towards the main track to couple to the portion of the train left

standing there, and the conductor himself signaled the engineer to back the train for that purpose. The proof, without contradiction, shows that the conductor was upon the top of the cars when the train was being moved back; that from some cause he fell off the cars, was run over and killed. In that case there was no allegations or proof of any improper or negligent conduct on the part of the engineer or any one else connected with the management of the train. His administrator based his recovery upon the idea that appellant did not furnish him a reasonably safe track upon which to operate the train; that by reason of its defective condition the cars had been caused to jump the track thereby throwing the conductor to the ground, where he was run over. There was a switch between the engine and cars Zachary was upon and the caboose and other cars on the main track, and it is the contention of Zachary's administrator that this switch was in a defective condition which caused the car Zachary was on to leave the track, throwing him therefrom. The proof showed that this car did leave the track at that point, but it also showed, without contradiction, that the conductor fell from the car before that point was reached; that the wheels passed over his body at that point and were thereby thrown from the track. The administrator introduced no proof to sustain his cause of action, therefore the peremptory was proper.

The next case cited is Hughes' Admr v. L. & N. R. R. Co., 23 Ky. Law Rep., 2286. In this case Henry Hughes was seen drunk shortly before the hour of midnight. His home was out near the railroad in the edge of town, and he was found the next morning by the side of the track, dead. There was not a scintilla of testimony showing any negligence on the part of the company, nor as to how Hughes came to his death, and, of course, a peremptory instruction was proper in this case.

Another case cited is Hughes v. C., N. O. & T. P. Ry. Co., 91 Ky. 526. In this case there was no allegation of any negligence on the part of those in the management of the train. The only negligence alleged was that the company allowed a loose timber to hang down from the roof of the tunnel, which it was alleged caused the death. The court, in that case, found that there was no evidence tending to show that Hughes' death was caused by the hanging timber. It was shown that the timber hung to one side of the train and could not have hit Hughes while he was on top of the cars. Therefore, there was

no evidence showing that Hughes' death resulted from the negligence charged in the petition.

Another one cited is Louisville Gas Co. v. Kaufman, 20 Ky. Law Rep., 1069. In this case a boiler belonging to the Louisville Gas Company, exploded and damaged the property of Kaufman, &c., and they sued the gas company for damages, alleging that the boiler exploded on account of the gas company's negligence. The plaintiffs' testimony showed that the boiler was caused to explode, either by those in charge of it allowing the water to become too low or that it was caused by inherent and latent defects in the boiler, which persons of ordinary prudence and care could have discovered before the explosion. In the first instance mentioned the gas company was liable, but in the second it was not, and as plaintiff introduced as much proof to show that the explosion was as likely to have occurred from one cause as the other, the court determined that the plaintiff's had not sustained their cause of action, and a peremptory was proper.

The last case cited is Wintuska's Admr v. L. & N. R. R. Co., 14 Ky. Law Rep. 579. In this case Wintuska's administrator alleged that his intestate was killed by a ledge of rock near the edge of the railroad, by being knocked off the train by it and killed. The court, in discussing that case, said: "A careful examination of the record, in our opinion, fails to show any testimony tending to prove that the death of Wintuska resulted from the cause above stated."

All the testimony shows and the opinion concedes, in the case at bar, that Long's death was caused by the wheels of the car passing over his body, and that the train was negligently and wrongfully put in motion by the engineer. The only real issue in the case was whether Long, by his own negligence, contributed to the negligence of the engineer to such an extent that he would not have been killed but for his own negligence, and upon this question the burden of proof was upon appellant. The case cited last supports the proposition that appellee was entitled to a peremptory instruction, as there was no testimony introduced showing contributory negligence on the part of Long.

This court, in the case of Passamaneck's Admr v. L. & N. R. R. Co., 98 Ky. 195, quoted with approval from Beach on Contributory Negligence, section 163, the following:

" 'In general it cannot be doubted that the question of negligence is a question of fact and not of law. Whenever there is any doubt as to the facts, it is the province of the jury to determine the question; or whenever there may reasonably be a difference of opinion as to the inferences and conclusions from the facts, it is likewise a question for the jury. It belongs to the jury, not only to weigh the evidence and to find out the questions of facts, but to draw conclusions as well, alike from disputed and undisputed facts.' "

It may be that this court rightfully construed the evidence, and that there are more reasonable inferences to be drawn therefrom, to the effect that Long went between the cars while the train was in motion to pull the Sullivan valve, than there are against this conclusion; but only one witness, the engineer, made a statement from which such inferences might be reasonably drawn, and he was expressly contradicted by another witness on a material fact and further by many facts and circumstances shown in the testimony. And, besides, the legal presumpjtion is that Long was performing some duty, at the time he was killed, he owed his master, rather than that he was committing an act of negligence. (I. C. R. R. Co. v. Cane's Admr, supra, and L. & N. R. R. Co. v. Bell, supra.) It is impossible, under the authority quoted from last and others similar thereto, to see how this court can, under the unsatisfactory and contradictory evidence, declare that the case should be taken from the jury and a peremptory instruction given in behalf of appellant.

For these reasons, I dissent from the opinion by the court.