## Collins v. Norfolk & Western Railway Company.

### (Decided March 13, 1913.)

### Appeal from Boyd Circuit Court.

1. Railroads—Operation—Injuries to Persons on Tracks—What Law Governs—Question for the Court.—In an action in this State for injuries occurring in a foreign State, the rights and liabilities of the parties are to be determined by the laws of such foreign State; and it is the duty of the court to decide, from the evidence, what the law of the foreign State, applicable to the issues, is.

2. Railroads—Operation—Injuries to Persons on Tracks—Care Required.—Under the laws of the State of West Virginia, a person using a railroad track for a foot path for his own convenience, elsewhere than at a lawful railroad crossing, and injured by a railroad train, while so doing, cannot recover of the railroad company, unless it be guilty of wanton or gross negligence.

3. Railroads—Operation—Injuries to Persons on Tracks—Action—Sufficiency of Evidence.—In an action for personal injuries, occur-

ring in the State of West Virginia, evidence held insufficient to authorize the submission of the question to the jury as to whether defendant was guilty of gross negligence.

DINKLE & PRICHARD for appellant.

J. R. JOHNSON, JR., and HOLT, DUNCAN & HOLT for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

In December, 1908, the Norfolk & Western Railway Company was engaged in the construction of an additional track on its line of railway from Big Sandy Store eastward for a distance of one mile to Clarion, on the north bank of Tug River, in the State of West Virginia. At each of these points a swinging bridge spans the river providing communication with the south side of the river, where the Big Sandy Coal Company operates a colliery. On the south bank a private roadway over the property of the coal company connects these bridges; on the north, they are connected only by the railroad, the bed of which is built at the foot of a mountain and near the water's edge. Big Sandy Store and Clarion are maintained by the coal company and are stopping stations for local trains for the reception and discharge of passengers and freight. At the former there is a store, operated by the coal company, an express office and post office. A part of the improvement being made by the railway company was the building of a bridge across a creek emptying into Tug River midway between these two stations, the stone and concrete work for which was being done by independent contractors, Baxter & Company. J. R. Collins, who lived east of this creek, was employed by Baxter & Company on this bridge work as night watchman and operator of two stationary engines. On the morning of December 10, 1908, upon being relieved of his duties, Collins went to the Big Sandy Store to get an express package, consigned to him and for his individual use. Being unable to get the package, he started down the railroad track home to breakfast and to sleep. It was then about or just before the break of day. When about 100 feet from the station he was struck and injured by an eastbound passenger train of the railway company. For the injuries thus sustained he sued the railway company, charging that his injuries were due to the negligence of the company, its failure to exercise a proper lookout for licensees, who might be upon the track, and

to the excessive speed at which the train was being operated. The defendant answered, traversing the material allegations of the petition, pleaded contributory negligence, and further that the injury to plaintiff occurred in the State of West Virginia, that he was then a trespasser and, under the laws of said State, it owed him no duty, other than to avoid wilfully injuring him after discovery of his peril. A reply, denying the affirmative matter of the answer, completed the issue. Upon a trial, at the close of all the testimony, the defendant moved to instruct the jury peremptorily to find for it, which motion was sustained and judgment was entered dismissing the petition. Plaintiff appeals and calls in question the correctness of the ruling of the trial court, contending that appellee did not, by proof, sustain its plea as to what is the law of West Virginia upon the matter in controversy, but that if it did, appellant's injury occurred in a populous community, and because of this fact the rule of that State does not apply.

It is well settled that when an action is brought in this State for injuries occurring in a foreign State, the rights and liabilities of the parties are determined by the laws of the foreign State. L. & N. R. R. Co. v. Keiffer, 132 Ky., 419; L. & N. R. R. Co. v. Smith, 135 Ky., 462; P. C. C. & St. L. Ry. Co. v. Austin's Admr., 141 Ky., 171, 143 Ky., 70; Keiffer v. L. & N. R. R. Co., 143 Ky., 383; L. & N. R. R. Co. v. Moran, 148 Ky., 418.

It is conceded that appellant, at the time of his injuries, was upon the private property of the railway company and was not at, or near, a lawful railroad crossing. To support its contention as to the law of West Virginia, appellee introduced an opinion of the West Virginia Supreme Court of Appeals, in the case of Spicer v. C. & O. Ry. Co., reported in Vol. 34, pages 514 to 523, inclusive, of the printed reports of that court. There the court held that a person using a railroad track for a footpath for his own convenience, elsewhere than at a lawful railroad crossing, and injured by a railroad train while so doing, cannot recover of the railroad company, unless it be guilty of wanton or gross negligence. Appellant introduced, as supporting his contention as to the law of that State governing the rights of the parties, the opinion of the court in the case of McVey v. C. & O. Ry. Co., 46 W. Va., 111. So much of the syllabus of that case, which is

prepared by the court, as is applicable to the issue in this case, is as follows:

"When a railway company has an exclusive right of way running parallel with, and adjoining to, a public street through a populous town, although the track be used by the public habitually as a footway, it is error to instruct the jury that, in running its trains and cars over such right of way through such town, it is the duty of such company to use the same degree of care to avoid injury to persons using such right of way as a footway as it would be required to use if the tracks ran lengthwise through said town upon a public street or highway.

"The fact that the tracks upon the company's right of way are so used by the public in such towns imposing upon the company the obligation to use greater care and prudence in running and managing its trains at such a place than would be required at places where the tracks are not so used.

"The defendant, in operating its road, on tracks so used by the public, should use ordinary care and diligence; and what constitutes ordinary care and diligence depends upon the circumstances. It must be commensurate with the danger incident to the handling of its cars and trains at that particular place."

From a reading of these opinions, it was the duty of the trial court to determine what the law of West Virginia was upon the issues presented in the case at bar. Keiffer v. L. & N. R. R. Co., 143 Ky., 383. He determined that the railway company owed appellant no duty except that of refraining from wantonly injuring him after it discovered his perilous position. Counsel for appellant contend that this conclusion is erroneous. In the Spicer case the following instruction to the jury was approved: "The court instructs the jury that persons who live in the vicinity of a railroad and use the tracks or spaces between the tracks as a footpath, although used by the public generally without objection on the part of the railway, go there at their own risk, and enjoy the license subject to the perils." This is the law of West Virginia, unless the later case of McVey supra is in conflict therewith. In the latter case the jury was instructed, in effect, that if there was nothing to indicate to the public the dividing line between a street and the railroad right of way, which had been so generally used by the public as a footway as to amount to a license, the railway company

should be held to the same degree of care to avoid injury to pedestrians as if the tracks ran lengthwise in the streets; and, if the intestate's death was due to the failure of the company to exercise such care, it was liable, and the fact that he was, at the time of his death, "using said right of way as a footway will not of itself defeat the action for his death." This instruction was condemned in the following language:

"This instruction goes too far, in requiring defendant, in running its trains and cars over its right of way in the town of Montgomery to use the same degree of care to avoid injury to persons using such right of way as a foot way as it would be required to use if the tracks ran lengthwise through said town upon a public street or highway, and on failure to use such high degree of care and by reason of such failure Robinson being killed it should be liable for his death. However long may have been such use of the right of way by the people, and to whatever extent it may have been so used, the fact remains that the railroad company has the exclusive right of way, upon which no unauthorized person has a right to be, as stated by Judge Brannam in Spicer v. Ry. Co., 34 W. Va., at page 517, 12 S. E., 554. And in Baltimore & O. R. Co. v. State, 62 Md., 479, it is said that 'Anyone who travels upon such track as a footway, and not for any business of the railroad, is a wrongdoer and a trespasser; and the mere acquiescence of the company in such case does not give the right to use the track, or create any obligation for special protection.' And in Mulherin v. R. Co., 81 Pa., St., 366; "The man who steps his foot upon the track does so at his peril. The company has not only a right of way, but it is exclusive at all times and for all purposes.' From the very nature of the case while the public may take the risk and so use the right of way as a footway, they can never acquire any rights therein."

That instruction has reference to an intruder upon the company's property and the care exacted of it toward him. It is condemned upon the authority of the Spicer case. This being true, it cannot be said that the court in the McVey case intended to depart from the rule announced in the Spicer case. The court there also refused to concur in the contention of plaintiff that, by the use of the right of way by the public as a footway for so great a length of time the public acquired a right so to use it. There is also language in the opinion from which it might

be inferred that the court intended to and did depart from the harsh doctrine of the Spicer case, but this can be accounted for, as appears from the opinion, by the fact that Judge McWhorter, who wrote the opinion, did not concur with the majority of the court. He says: "Speaking only for myself, as a majority of the court does not agree with me in the proposition, I claim that the backing of a train of twenty-three cars over tracks running through a populous town or village, in the night time, where the people habitually use the right of way as a public footway, and so backing such train without keeping a lookout on the head end of the forward car of the train being so backed, and without keeping a light on the head end of such front car, such omission to keep either a light or watchman would be gross negligence upon the part of the railroad company; and in this I am supported by the court in Nuzum v. Railroad Co., supra." The questions emphasized, and supported by authority, in the McVey case are that the railroad company has an exclusive right to the use of its right of way, not on a public highway, and that the use thereof by the public, however long it may be, confers on the public no rights therein, and if they intrude, they do so at their peril. This rule necessarily excludes all lookout duty on the part of the railway company to avoid injury to trespassers thereon, and we hold that the rule announced in the Spicer case, that the railway company owes no duty to a trespasser except to refrain from wantonly injuring him, after discovery of his peril, is not overruled or departed from in the McVey case.

This leaves for our consideration only the question as to whether appellee, after discovering appellant's position of danger, exercised such care as it could under the circumstances, to avoid injuring him. Upon this subject the uncontradicted evidence of the engineer in charge of the train that caused the injury is, that after he passed the Big Sandy Store he saw appellant close by the side of the track walking in the direction the train was going, and blew the whistle and kept blowing it until the train struck him, but that appellant instead of stepping from the track, stepped on it, and he thereupon applied the emergency brakes and stopped as quickly as he could. The fireman states that he did not see appellant at all until he was struck. Upon this showing we are compelled to hold that the servants of appellee in charge of

said train failed in no duty owing by them to appellant, and that the trial court did not err in taking the case from the jury.

Judgment affirmed.