## Williamson's Administrator v. Norfolk & Western Railroad Company.

### (Decided October 8, 1914.)

### Appeal from the Pike Circuit Court.

1.  Railroads—Operation—Accidents at Crossings—Contributory Negligence of Person Injured.—In West Virginia, as the law of that State appears in evidence in this case, the person proposing to use a railroad crossing must stop, look and listen for an approaching train, and failure to do so is not excused by omission of statutory signals, and is negligence per se.

2.  Limitation of Actions—Computation of Period—Amended Pleadings.—Where an amended petition is filed in an action to recover for the death of a person struck by a locomotive at a railroad crossing, setting up additional grounds of negligence, a plea of the statute is unavailing; the cause of action is the death of the intestate, and an amended petition setting up additional

grounds for a recovery does not state a new or different cause of action.

J. M. ROBERSON, ROSCOE VANOVER, ROBERSON, LANGLEY & COOPER and C. W. WHITT for appellant.

J. R. JOHNSON, JR., and HOLT, DUNCAN & HOLT for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

J. C. Williamson was struck by a locomotive and killed while crossing the tracks of the Norfolk & Western Railroad Company in Williamson, Mingo County, West Virginia, March 22nd, 1911.

The administrator of his estate instituted an action in the Pike Circuit Court on January 19, 1912, to recover damages from the railroad company for the negligent killing of Williamson.

The particular acts of negligence complained of in the petition were failure to give the statutory signals, excessive rate of speed, negligent obstruction of the view at the crossing where plaintiff's intestate was killed, and failure to keep a lookout.

By answer, the defendant company denied all the acts of negligence charged; denied that the place where plaintiff's intestate was killed was a public crossing, and charged that he was a trespasser upon its tracks, and that he was guilty of contributory negligence. Defendant company also pleaded the law of the State of West Virginia applicable to the case.

By amended petition, plaintiff charged that the locomotive which struck and killed Williamson was running backwards. To this, defendant company interposed a plea of the West Virginia two-year statute of limitations, the amended petition having been filed June 6, 1913, and more than two years after Williamson's death. The court overruled a demurrer to this plea.

Upon the trial, at the conclusion of all the evidence, the court granted the motion of defendant company to instruct the jury to find a verdict for it; and from the judgment thereupon entered, dismissing the petition, plaintiff appeals.

1. The principal ground upon which the trial court seems to have rested its ruling that defendant company was entitled to a peremptory instruction was that the uncontradicted proof showed that plaintiff's intestate was guilty of contributory negligence.

It appears from the evidence that on March 22, 1911, shortly before eleven o'clock in the forenoon, a yard engine of appellee company's with seven cars thereto attached, moved westward along the middle track, crossing Pike Street in Williamson, to a point west of that street, where the locomotive was stopped. The cars which it had been drawing were then detached, and the locomotive proceeded westward to a cross over leading from the middle track on which it had been moving to the main line track. When the locomotive got on the main line track it proceeded to move backward, i. e., with the tender ahead, in an eastward direction, on the main line track; and when it reached Pike Street it struck and killed plaintiff's intestate.

It appears from the evidence that Williamson, after the locomotive and cars mentioned had crossed over Pike Street going west, had ridden across the tracks of the railway company on Pike Street, going from the south to the north side of the tracks, in a wagon driven by one Pike. As they were crossing the tracks Williamson's hat blew off. He tried to get the driver of the wagon to stop while on the tracks, but this the driver declined to do. When the wagon had cleared the tracks, the driver stopped it, and Williamson got off and ran back across the tracks after his hat, which was lying on the south side of the south track. He picked up his hat, knocked the dust off of it, and started running back across the tracks to the north side thereof where the wagon was waiting for him; and as he reached the fifth and last track, which was the main line track, he was struck and killed by the locomotive heretofore mentioned.

The seven cars which the locomotive had detached and left standing on the middle track were close to the line of the street, and to some extent obstructed the view of the main line track in the direction from which the locomotive was coming. There was no proof that Williamson stopped or looked for approaching trains just before going upon the track where he was killed; in fact, it is clear from the evidence that he did not do so, although one witness says he halloed at Williamson as he started back across the tracks, and that Williamson looked east and kept on going, but did not look west, the direction from which the locomotive was coming.

2. It is well settled that when an action is brought in this state for injuries occurring in a foreign state,

the rights and liabilities of the parties are determined by the law of the foreign state. Collins v. Norfolk & Western, 152 Ky., 755; and cases therein cited.

3. It is also the rule that the law of a sister state must be proven. P. C. C. & St. L. v. Austin's Admr., 141 Ky., 722.

Appellee company introduced in evidence as establishing the law of West Virginia upon the questions involved in this case the following decisions of the West Virginia Supreme Court: Spicer v. C. & O., 34 W. Va., 514; Beyel v. N. N. & M. V. 34 W. Va., 538, and Riedel v. Traction Co., 63 W. Va., 522. This was all the evidence introduced relative to the law of that state.

4. In the Beyel case, it was said: "Then, what is the duty of a person crossing a railroad on a highway? It is universally deemed negligence for any one to cross without taking any precautions reasonably in his power to ascertain whether a train is approaching. As a general but not invariable rule, it is deemed negligence to cross without looking continuously in every direction in which the tracks run, to make sure that the road is clear, and if looking leaves any doubt, without also listening for approaching trains." And, in the syllabus, which in West Virginia is official, it is said: "It is the duty of a traveler on the highway crossing a railroad, to look carefully for an approaching train; and if looking leaves any doubt, or the view is obstructed, he must also listen before attempting to cross; otherwise, he will himself be guilty of negligence which will prevent his recovery for an injury received in crossing. Obstructions rendering the view obscure and unreliable call for greater caution on his part."

In the Riedel case (decided in 1908), the court said: "The duty on the part of pedestrains, drivers of vehicles and others having occasion to use a public street crossing over which a street railway is operated, to look and listen for approaching cars, is imposed by the general rule requiring them to exercise reasonable care and prudence in using such crossing. * * * Failure under such circumstances to make use of the faculties of sight and hearing is negligence *per se,* if it appears that a reasonable and fair use thereof would have disclosed the danger and enable the party to have avoided it. * * * Neither haste nor mental preoccupation on the part of a person using such a crossing will justify or ex-

cuse his failure to make a reasonable effort to ascertain whether it is reasonably safe to attempt to cross. He must have in mind the matter of effecting the crossing.''

It is clear that under the law of the State of West Viriginia, the person proposing to use a railroad crossing must stop, look and listen for an approaching train; and that failure so to do is not excused by the negligence of the railway servants in omitting to give the statutory signals; and that, under the laws of West Virginia, failure to stop, look and listen is not merely evidence of negligence, for the jury, but negligence *per se.*

There is no question here involved of any omission of duty upon the part of the railway servants after the discovery of the peril of plaintiff's intestate; and the trial court properly granted the motion of defendant company to instruct the jury to find a verdict for it, as the proof shows contributory negligence upon the part of plaintiff's intestate.

This makes it unnecessary to consider the other questions presented, i. e., as to whether plaintiff failed to establish that Pike Street crossing was a public crossing; and whether defendant company failed to show by competent evidence that Pike Street had been closed to traffic by appropriate action of the municipal authorities of the city of Williamson; and whether plaintiff's intestate was a trespasser at the time he was killed.

5. Complaint is made of the admission and exclusion of certain testimony. As to that excluded, the avowals are in the record; and in view of the court's finding that plaintiff's intestate was guilty of contributory negligence entitling defendant to a peremptory instruction, the errors complained of, if any there were, are immaterial.

6. It is also insisted by appellant that the court erred in overruling his demurrer to the plea interposed by defendant of the statute of limitations against the facts alleged in the amended petition.

As heretofore mentioned, the amended petition charged that the locomotive was backing up when it struck and killed plaintiff's intestate; and the pleading was filed more than two years after the date of the accident. The defendant pleaded the West Virginia statute of limitations, which is two years, and the court overruled a demurrer to this plea, presumably upon the theory that the amended petition sets up a new cause of action. In this ruling the trial court erred.

In L. & N. v. Greenwell's Admr., 155 Ky., 799, the court said:

"In the case at bar, the inquiry was whether the death of Greenwell was due to appellant's negligence. His death was the cause of action. If it was due to the negligence of appellant, there may have been sole or concurrent causes, and plaintiff might allege and rely upon any or as many of them as he cares to in his original action, and the court may in its discretion permit the plaintiff to plead by amendment any acts of negligence relating and contributing to the cause of action, that is, the injury complained of and previously set forth."

The amended petition setting up that the locomotive was running backwards when plaintiff's intestate was struck and killed was not a departure from the original cause of action. It did not even state an additional ground of negligence; but was only an elaboration of the charge of failure to keep a lookout pleaded in the original petition. But if it had stated additional acts of negligence upon the part of the railway servants, the court should have sustained a demurrer to the plea of the statute of limitations. But as plaintiff failed to make out a cause of action, this error was not prejudicial.

Judgment affirmed.